THE STATE, EX REL. H. T. CLARK v. THE BOARD OF COUNTY COMMISSIONERS OF BUFFALO COUNTY, ET AL.

1. **County Commissioners:** JUDICIAL ACTS. In the audit, adjustment, and allowance or disallowance of a claim against the county, the board of county commissioners acts judicially, and its judgment in the matter is conclusive, unless appealed from, or reversed in the mode prescibed by law.

2. ———: ———. The board has no power to review, reverse, vacate, or set aside, its former adjudication of a claim against the county.

3. **Judgment.** The judgment of a court or tribunal, having cognizance of the subject matter, is conclusive between the parties and their privies, when the same matter comes in question between them in the same or another court.

4. **Powers of Public Officers.** Where power is given to public officers in the permissive form—may—if the public interests or individual rights call for its exercise, it is peremptory.

5. **Claims Against Counties:** DUTY OF COMMISSIONERS. Upon the final adjudication of a claim against the county, it is the duty of the board to issue to the claimant his warrant for the amount, or so much thereof as shall not exceed the aggregate amount levied by tax for the current year for the fund out of which it is payable.

6. **Mandamus to levy a Tax.** When the board refuses to levy a tax clearly provided by law, it may be compelled by mandamus to levy such tax to pay a claim which has been finally adjudicated against the county.

THIS was an application for a peremptory writ of mandamus to compel the board of county commissioners of Buffalo county to levy a tax for the payment of a claim audited and allowed the relator by the said board. It was the same claim, payment of which was enjoined by William L. Dayton, a tax payer of said county, suing for himself and others in like situation, against the relator and the respondents, which suit was finally determined in this court the thirteenth day of May, 1877, in the action in this court entitled, Henry T. Clark, plaintiff in error, against William L. Dayton and the respondents in this case, *ante* page 192. A further statement of the facts out of which the indebtedness arose is unnecessary.

*J. R. Webster*, for the relator.

Mandamus is the proper and only remedy where there is a fixed, unchangeable ascertainment or assessment of indebtedness, whereby an open claim becomes liquidated, and there is an established liability. *Arthur v. Adams,*

49 Miss., 404, 409, 410. *Board of Police v. Grant*, 9 S. & M. 77. *Marathon v. Oregon*, 8 Mich., 372, 377. *Dayton v. Rounds*, 27 Mich., 82, 85. *Ex parte Com. Council, Albany*, 3 Cow., 358, 364. *State v. Smith*, 11 Wis., 65, 67. *People v. Supervisors*, 10 Wend., 363, 365. *People v. Supervisors*, 51 N. Y., 401. By an audit unappealed from, any claim properly within the jurisdiction of the commissioners, the indebtedness becomes fixed, liquidated, and established; the audit and allowance is a judgment, and is conclusive upon the claimant and the county. *Brown v. Otoe County, ante* page 111. *Snelson v. State*, 16 Ind., 29, 33. *State v. Buckles*, 39 Ind., 272, 274, 275. *Gaston v. Com.*, 3 Ind., 497, 499. *Burnet v. Portage*, 12 Ohio, 54, 58. *Eldorado Co. v. Elstner*, 18 Cal., 144, 149. *Babcock v. Goodrich*, 47 Cal., 488, 513, 514. *People v. Supervisors*, 1 Hill, 195, 199. *Supervisors v. Briggs*, 2 Denio, 27, 32, 44. *Carroll v. Board of Police*, 28 Miss., 38, 48, 49. *Yalabusha v. Carbry*, 3 S. & M., 529, 554, 558. *Beaman v. Board of Police*, 42 Miss., 245, 248.

The matter was not only audited, and allowed to stand unappealed from, but an action by William L. Dayton, suing for himself and other tax-payers, was brought, to which these respondents were parties defendant. In that action it was competent to have attacked the audit upon the ground that the commissioners had no jurisdiction to allow the claim, or that the funds available for road and bridge purposes would not authorize so great an expenditure. All that the parties to the controversy might have litigated in the case, and the parties are concluded and estopped from bringing it now into controversy. *Campbell v. Ayres*, 1 Iowa, 257. 261, 262. *Embury v Conner*, 3 N. Y., 511, 622. *Danaher v. Prentiss*, 22 Wis., 311, 317. *Voorhees v. Bank*, 10 Pet., 449, 504, 505. And the estoppel applies against the real and substantial parties, though not

on. record as parties, who could control the proceedings and appeal from the judgment. *Castle v. Noyes*, 14 N. Y., 329, 332. *Cecil v. Cecil*, 19 Md., 72, 77, 79, 80. *Peterson v. Lathrop*, 34 Pa. St., 223, 227, 229. The estoppel also applies against the parties who maintain the action, though not parties to the record. *McNamee v. Moreland*, 26 Iowa, 96, 112. 113. *La Guen v. Gouverneur*, 1 Johns, Cas., 436.

*E. Wakeley*, for the respondents.

1. The former adjudication does not estop the county from denying its liability to Clark. To have such effect it must appear that the matter now sought to be litigated was directly in question in the former suit. But this was not the case. The former suit was by a taxpayer to enjoin the commissioners from issuing the warrants. To maintain the suit the plaintiff was required to show: 1. That the county ought not to pay Clark. 2. That the plaintiff, as a taxpayer, was in such a situation that he had a right to prevent the payment. If he failed to establish either proposition he failed in his case. By the determination of this court he failed to establish the second one, and therefore his action was dismissed. The court did not find it necessary to, and did not in fact, decide upon the first one. Again, the matter so decided must be in issue between the same parties now litigating. This was not the case—no issue was joined between Clark and the county.

2. Clark's demand being merely an audited account, or claim, is to be paid only in the ordinary manner, even if it is not subject to defense. The provisions of the statute are very plain and direct in this respect. Warrants may be issued to him on the proper fund within the limitations prescribed, namely: that they shall not exceed the amount in the treasury and the

amount of the levy for providing the fund out of which the warrants are to be paid. It seems trifling with the court to argue so plain a proposition as this. The statute forbids any over-issue, making the commissioners personally liable for it, and my learned adversaries disclaimed, as I understood, the impropriety of asking this court to compel the commissioners, by mandamus, to violate the peremptory interdict of the statute.

3. That the commissioners have no power to levy a tax for the specific purpose of paying Clark the amount found due and allowed to him by the commissioners, is equally plain and indisputable.

The power of a county to levy taxes must be found in the constitution or laws, or it does not exist. And no such power as the one in question is found in the constitution or any statute, or can possibly be derived therefrom. If such a special tax can be levied, so can it be to pay any and every claim allowed by the commissioners, small or large, and every creditor of the county, upon getting his indebtedness audited, can come to this court for his mandamus.

There can be as many special tax levies as there are audited claims; and the whole machinery and process provided by statute for paying demands in their due order, and as the revenues of the county will permit, can be utterly ignored and made obsolete by the omnipotence of a supreme court mandamus. No case is found to justify this astounding assumption, and it needs no refutation. High's Ex. Legal Remedies. *The People v. Clark County*, 50 Ill., 213.

4. It was suggested by counsel that the commissioners had not exhausted their power to levy taxes because by Sec. 2, p. 45, Laws of 1877, they could in their discretion have levied a greater sinking fund than was in fact levied in July last. And therefore the court can compel them to exercise this discretion by levying such tax as the court may think it proper they should levy.

This assumption is directly contrary to one of the plainest fundamental rules in respect to mandamus, to-wit: that where, by law, inferior tribunals or officers are permitted to exercise a discretion, a court will not, by mandamus, control such discretion, but only compel them to act and exercise it. ˙And this rule is embodied in our statutes. Gen. Stat., Sec. 645, p. 640. High's Ex. Legal Remedies, Secs. 42, 48, and notes. *Justices v. Hoodenpyle*, 7 Humph., 145. *Morgan v. Commonwealth*, 55 Penn. State, 456.

GANTT, J.

The relator erected a highway bridge across the Platte river, in pursuance of a contract, whereby the county commissioners of Buffalo county stipulated that said county should pay for that portion of the bridge which lay in said county. When the bridge was completed, it was accepted by the said board of county commissioners, and opened to public use as a highway bridge; and the board, having examined and audited the relator's accounts, did, on the 15th of August, 1874, adjudge the sum of $19,577.50 to be due and owing to the relator for building that portion of the bridge which lay within said county, and directed a warrant to be drawn upon the treasurer of said county in favor of the relator for the sum of $2,900.00, then undrawn of the bridge fund levy for the years 1872 and 1873. The board have refused to draw the warrant or to levy any bridge tax, and the relator now applies for a writ of mandamus against the respondents.

One ground on which the allowance of the writ is resisted on is, that on the third day of July, 1877, the board of county commissioners, by proceedings then had as such board, did reconsider and did "reject, rescind, and annul" the settlement, audit, and allowance of the claim

of the relator and the adjudication made in his favor on the fifteenth of August, 1874. In the case of *Brown v. Otoe County*, decided in this court, *ante* p. 111, it was held that in the audit, adjustment, and allowance or disallowance of a claim against the county, the board acts judicially, and its judgment in the matter is conclusive, unless appealed from, or reversed on error in the mode prescribed by law. Indeed, this seems to be the settled rule according to the whole current of the authorities. And it is also a well-established doctrine of the law that the board can only exercise such powers as are especially granted to it, or as are incidentally necessary to carry into effect the powers so granted. *Sioux C. & P. Ry. v. Washington Co.*, 3 Neb., 30. But there is no power conferred by law upon the board to review, reverse, vacate, or set aside its former adjudication; and therefore its proceedings, had on the third day of July, 1877, rejecting, rescinding, and annulling the adjudication of the relator's claim, were without authority, and were not merely voidable, but simply void.

Another ground on which the allowance of the writ is resisted is, that the board had no authority in law to contract with the relator for the erection of the bridge, and that as his claim or demand against the county accrued on account for building the same, the board had no authority to audit and allow the claim, and therefore the adjudication of the same does not conclude the respondents in this action, for the reason that the same was without authority and void. But the subject matter of this defense was litigated and determined in the injunction case of *W. L. Dayton v. The Board*, and the relator, which was brought to this court on error by the relator. In that case the decree of the district court was reversed, and a final decree was rendered in this court in favor of the relator. See *ante* p. 192. And in that case the validity of the adjudication in favor of the relator,

and the contract to build the bridge, were directly in issue, and determined. And it will not be denied, as a general rule, that the judgment of a court or tribunal, having proper cognizance of the subject matter, is conclusive between the parties and their privies when the same matter comes in question in the same or in another court. Nor is it essential that in such case there must be the identical persons or parties to the action. If they are substantially the same it is sufficient. Hence, this second matter of defense is *res adjudicata,* and the respondents are estopped from inquiry into the validity of the former adjudication of the relator's claim. 2 Burr, 668. 3 East, 346. *French v. Neal,* 24 Pick., 61. *Case v. Reeves,* 14 John., 82. *Green v. Clarke,* 2 Kern., 343. *Davis v. Milburn,* 4 Iowa, 246. *Fishli v. Fishli,* 1 Blackf., 360. *Castle v. Noyes,* 14 N. Y., 335. Swift. Ev., 10. Bac. Abr. Ev., F.

It is admitted that there is "undrawn and unexpended of the taxes levied heretofore for bridge purposes in said county the sum of $1,922.25," and that for the year 1877, no bridge tax was levied. It is also admitted that on demand by relator the respondents refused to draw a warrant in his favor upon the treasurer for this undrawn and unexpended bridge fund, or to pay the amount adjudged to be due to him; and it is further admitted that the respondents refused to levy a bridge tax to pay the debt so adjusted in favor of the relator. Now as the $1,922.25 of bridge fund is undrawn and unappropriated, the relator is unquestionably entitled to his warrant for that amount on account of his debt.

The "act concerning counties and county officers" confers on the board the power to examine and settle all accounts of receipts and expenditures of the county, to allow all accounts chargeable against the county, "and when so settled, county warrants *may* be issued therefor as provided by law." In *The King v.*

*The Inhabitants of Derby*, Skinner, 370, the court held that "*may*, in the case of a public officer, is tantamount to *shall*, and if he does not do it, he shall be punished upon an information." The rule is, that where power is given to public officers in the permissive form of language, "whenever the public interests or individual rights call for its exercise" it is peremptory. "What they are empowered to do for a third person the law requires shall be done. It is placed with the depository to meet the demands of right and prevent a failure of justice." *Supervisors v. United States*, 4 Wallace, 440, and cases cited. It was therefore the positive duty of the board to have issued this warrant when the relator demanded the same.

But it is not so clear that it was the duty of the board to issue warrants for the balance of the relator's adjudicated claim. For it is admitted "that, except as aforesaid, all the levies of taxes in said county previous to the year 1877 for bridge and road purposes had been exhausted by warrants against them for the full amounts authorized by law." And section twenty-four of the "act concerning counties and county officers," provides that "it shall not be lawful for any warrant to be issued for any amount exceeding in the aggregate the amount levied by tax for the current year." And section twenty-six makes the commissioners personally liable for warrants issued in excess of the levy of the current year. And as there was no bridge funds against which warrants could be drawn, except the $1,922.25, we think the board had no authority to issue any in excess of that amount.

But when a claim chargeable against the county is examined and settled by the judgment of the board, such adjudication, unless appealed from or reversed in the mode prescribed by law, is conclusive and must be paid. And in the case at bar, it seems there

can be no doubt as to the duty of the board, for in addition to the fund derived from the road tax, to be applied specially to the construction and repairing of bridges, Sec. 15, Chap. XLVII, Revised Statutes, entitled "Roads," provides that "the county commissioners may levy an additional cash tax for bridge purposes, not to exceed five mills on the dollar of the assessed value of all taxable property, to be levied and collected as other taxes," the same to be exclusively applied to the building and repairing of permanent culverts and bridges.   Although the language—*may levy*—is used in the permissive form, yet, whenever individual rights call for the exercise of the power conferred by law, it is imperative.

In *King and Queen v. Barlow*, 2 Salk., 609, it is held that "when a statute directs the doing of a thing for the sake of justice or the public good, the word *may* is the same as the word *shall*." See authorities before cited.

It was, however, urged in the argument that "it is not the province of a mandamus to settle differences of opinion between municipalities and claimants as to the amount due for services rendered." This is unquestionably the correct rule.   But the case at bar does not come within it, for the reason that the relator's claim was settled and the amount was judicially ascertained by the final adjudication of the board.   And hence, it was clearly the duty of the board to levy the tax prescribed by law for bridge purposes, in order to raise the fund against which warrants may be drawn to pay the bridge debts of the county.   This is a duty prescribed by the law, and when the board refuses to perform it we can find no reason why it shall not be compelled to do so.

It seems to us the correct rule is, that when a claim against the county is finally adjudicated, and the law clearly provides for the levy of a tax to pay such claim,

and the board of county commissioners refuse to levy such tax, the remedy is by mandamus to compel the levy of the tax, and not to subject the county to costs of litigation for the neglect of its officers. *Covington v. Dunken*, 52 Ala., 28. *Elmore v. Zeigler*, 52 Ala., 227. *State v. Wilson*, 17 Wis., 687. *Carroll v. The Board*, 28 Miss., 48.

The peremptory writ is granted to compel the respondents to issue the warrant to the relator for the amount of the $1,922.25 bridge fund undrawn and unexpended; and also to compel the respondents and their successors forthwith, and annually hereafter to levy the tax prescribed by law, and issue to the relator, according to law, his warrants against such tax levies until his debt is paid.

WRIT GRANTED.