STATE OF NEBRASKA, EX REL. MARQUETT, DEWEESE & HALL, V. A. BAUSHAUSEN ET AL.

FILED NOVEMBER 5, 1896. No. 5875.

1. **Mandamus:** PLEADING. The pleadings in proceedings in *mandamus* have the same effect and are to be construed as in ordinary civil actions. Hence a material averment in a petition for *mandamus*, not denied by the answer, is to be taken as true.

2. ———: DEMAND: WAIVER. As a general rule, *mandamus* will not issue at the suit of a private individual to compel a public officer to do any official act until a demand has been made upon him to do it. But a formal demand is unnecessary where the conduct and action of the respondent are equivalent to a positive refusal.

3. ———: COUNTY BOARD: RES JUDICATA. The allowance of a writ of *mandamus* to compel a county board to include relators' claim in its estimates of the taxes to be levied for the ensuing year is not necessarily an adjudication that a definite sum is due from the county to the relators.

4. **County Board:** ALLOWANCE OF CLAIM: RECONSIDERATION. Under section 40 of the act of the legislature of 1879, entitled "An act concerning counties and county officers" (Compiled Statutes, ch. 18), a county board has authority to once reconsider its action in the allowance of a claim against the county, upon notice to the parties interested.

5. ———: ———: ———: WAIVER OF NOTICE. The formal notice required by said section to be given may be waived by the person entitled thereto.

6. ———: ———: RES JUDICATA. Where a claim presented to the county board for examination and audit is disallowed, which decision is appealed from by the claimant, and he afterwards dismisses such appeal, the action of the board is final and conclusive.

ORIGINAL application for *mandamus* to compel the supervisors of Sherman county to draw a warrant in favor of relators in payment of their claims against the county.

*A. G. Greenlee, F. M. Hall,* and *J. W. Deweese,* for relators.

*Long & Mathew* and *Emerson A. Smith, contra.*

NORVAL, J.

This is an application for a peremptory writ of *mandamus* to compel the respondents, as supervisors of Sherman county, to draw a warrant in favor of the relators in payment of certain claims against the county. The respondents filed an answer to the petition, and the relators interposed a general demurrer thereto, which was overruled at the September term, 1892. This court subsequently appointed a referee to take the testimony and report the same to the court with his findings of facts and conclusions of law thereon. Upon the coming in of the report of the referee each party filed exceptions thereto, which have been argued and submitted for consideration.

It appears from the proofs, and the referee substantially so found, that in 1890 relators filed with the county clerk of Sherman county three claims against the county for legal services, aggregating $1,100; that at a session of the board of supervisors held on January 16, 1891, there was allowed on said claims $800, and relators, by their attorney, at the time agreed to accept said sum in full payment of said claims; that on June 12, 1891, the county board, without notice to relators, reconsidered its action in allowing relators' claims, and ordered the county clerk not to issue a warrant thereon, and further consideration of said claims was postponed; that on June 15, 1891, J. W. Long, the attorney for relators, was notified that further action on said claims would be taken by the county board, which was then in session, and said Long on said day appeared before the board and, at his request, further consideration of said claims was laid over until the next meeting; that on September 16, 1891, the county board, when Long was present, disallowed the claims, and notice of appeal from the decision was then given; that relators subsequently appealed to the district court, and afterwards dismissed their said appeal; that in pursuance of a writ of *mandamus* issued out of this court the claims were included by the board in the esti-

mate of expenses for the year 1892, and there is a sufficient amount in the county treasury, together with the taxes levied, out of which the warrant can be paid; that no formal demand that a warrant be issued relators was ever made upon the county board of Sherman county. The referee found as conclusions of law, in effect:

1. That the granting of the writ of *mandamus* by the court to compel the county board to include the claims of the relators in their estimate of taxes to be levied for 1892 was not an adjudication of the amount due from the county to relators.

2. In this action the merits of the claims cannot be inquired into, since the action of the county board in allowing the same is conclusive unless reversed or modified on appeal.

3. The county board in passing upon the claims of relators acted judicially, and it had no power to reconsider its action thereon.

4. The appeal taken from the reconsideration and disallowance of relators' claims was a nullity, and did not affect relators' rights.

5. Where the party instituting a suit in *mandamus* has a private interest in, or claims the immediate benefit of, the act sought to be coerced, he must allege and prove a demand upon the officer to perform said act, in order to maintain the suit.

6. That as no demand upon the respondents has been proved, the writ should be denied.

Exception is taken by the relators to the conclusion of law last above stated, and we think the exception should be sustained for the reasons hereafter given. In the application for the writ it is expressly alleged that the respondents have refused to draw a warrant in favor of the relators in payment of their claims. This averment is not denied, or put in issue, by the answer. On the contrary, the respondents plead matter in justification of their refusal to issue a warrant upon the claims. The answer must therefore be treated as an admission of a

State v. Baushausen.

prior demand, and refusal, and relators were not called upon to establish the same by the proofs. The pleadings in proceedings in *mandamus* have the same effect, and are to be construed as in ordinary civil actions (Code, sec. 653); hence a material averment in the application, not denied in the answer, must be taken as true. (*State v. Hawes*, 43 O. St., 16; 14 Am. & Eng. Ency. of Law, 330.)

The writ should not be refused merely for the failure to prove a demand upon the respondents for another reason. The answer pleads a reconsideration of the former action of the board in allowing the claims, the subsequent disallowance, the appeal from said decision by the respondents to the district court, and the dismissal of the action in that court. The defenses pleaded plainly disclose a determination not to draw the warrant or pay the claim. A formal demand upon the respondents, had one been made, in view of the answer and the evidence adduced before the referee, would have been unavailing A refusal to draw the warrant was based upon grounds other than that no demand therefor had been made. Ordinarily, when an application for *mandamus* is made by a private party, a demand must be made upon the respondent to perform the duty prior to the commencement of the action. (*Kemerer v. State*, 7 Neb., 130; *State v. Eberhardt*, 14 Neb., 201; *State v. Smith*, 31 Neb., 590.) But there is an exception to the rule, as firmly established as the rule itself. A demand or refusal to perform the duty is not necessary in all cases before a suit of *mandamus* will lie. In the language of Mr. Merrill in his work on Mandamus, section 225: "The law never demands a vain thing, and when the conduct and action of the officer is equivalent to a refusal to perform the duty desired, it is not necessary to go through the useless formality of demanding its performance. Anything showing that the defendant does not intend to perform the duty is sufficient to warrant the issue of a *mandamus*." The doctrine just quoted, in somewhat different language, is laid down in Moses, Manamus, 127; 2 Dillon, Municipal Corpora-

tions, sec. 867; *United States v. Town of Brooklyn*, 10 Biss.
[U. S.], 466; *Commonwealth v. City of Pittsburgh*, 34 Pa. St.,
496, 512; *State v. Clinton County*, 6 O. St., 280; *Supervisors
v. Thompson*, 61 Fed. Rep., 914; *Maddox v. Graham*, 2 Met.
[Ky.], 56.

*Palmer v. Stacy*, 44 Ia., 340, was an application for a
*mandamus* to compel the levy of a tax for the payment of a
judgment against the Bank of Algona. No demand was
made upon the defendant to perform the act, yet the court
held this was not fatal, since it was disclosed that the
defendants had no intention to levy the tax.

*State v. Freeholders of Hudson County*, 35 N. J. Law, 269,
was a rule for *mandamus* to respondents to receive relat-
ors as members of the board of chosen freeholders of the
county of Hudson. It was held that a formal demand to
be admitted was not necessary, because it was manifest
from the resolution passed by the respondents declaring
the election of the relators to be void and to allow the
sitting members to retain their seats that they did not in-
tend to admit them. So in the case at bar, the reconsid-
eration of the action of the board of supervisors in allow-
ing relators' claims, and afterwards disallowing the same,
amounted, substantially, to a refusal to perform the act
now sought to be enforced, and no formal demand was
therefore necessary.

Relators have also excepted to the first conclusion of
law made by the referee. By the sixth subdivision of
section 25, article 1, chapter 18, Compiled Statutes, it is
made the duty of the county board, at their regular meet-
ing in January of each year, to prepare and publish an
estimate of the necessary expenses of the county during
the ensuing year, and it is also provided that no levy of
taxes shall be made for any other purpose or amounts
than are specified in such estimate as published. Section
34 of said article and chapter declares: "It shall be un-
lawful for the county board of any county in the state
to issue any warrants for any amount exceeding the ag-
gregate of eighty-five per cent of the amount levied by tax

for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county, in excess of the tax levied for county expense during the current year, nor shall any expenditure be made or indebtedness be contracted to be paid out of any funds of said county in excess of the amount levied for said fund." It is very evident from a reading of the foregoing sections that it was the intention of the legislature that the making of the estimate of expenses required to be made by the county board should precede the allowance of a claim against the county and the drawing of a warrant in payment of the same. This being true, it follows that in the *mandamus* proceedings to compel the respondents to include the claims of relators in the estimate of taxes to be levied for the year 1892 the issues in the case at bar were not necessarily adjudicated, nor were the merits of such claims, or the amount due thereon, unalterably established or determined. The only purpose and scope of the writ in that case was to require the county, by proper estimate and levy of taxes, to provide means for the payment of any sum which might be found due relators. (*State v. Cather*, 22 Neb., 796.)

Exception is taken by the respondents to the referee's third conclusion of law, which raises the question whether under the existing statute a county board can reconsider its action in passing upon claims presented against the county for audit and allowance. We agree with counsel for relators that a county board can exercise only such powers as are granted by express statute, or such as are necessarily or fairly implied in, or incident to, those expressly granted. It follows that such boards have no power to review or reconsider its former adjudication, unless authorized by statute to do so. It is no longer an open question in this state that a county board

has exclusive original jurisdiction to pass upon claims, and that in so doing it exercises functions judicial in their nature. The allowance or disallowance of a claim by the board has the force of a judgment until reversed or set aside. The cases so holding are collated in *Stenberg v. State*, 48 Neb., 299. It has been ruled by this court that prior to 1879 a county board was without jurisdiction to reconsider or set aside its former action in allowing or rejecting a claim. (*State v. Buffalo County*, 6 Neb., 454; *Kemerer v. State*, 7 Neb., 130; *State v. Cathers*, 25 Neb., 250.) Whether those decisions are applicable, and should be now followed as precedents, depends upon the construction which shall be placed upon legislation which was not in existence at the times the facts in the cases referred to arose.

In 1879 the legislature passed an act concerning counties and county officers. (Session Laws, 1879, p. 353; Compiled Statutes, ch. 18.) Section 23 of said act provides: "The county boards of the several counties shall have power: * * * Second—To manage the county funds and county business, except as otherwise specifically provided. * * * Fifth—To examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county." Section 40 declares: "The provisions of this subdivision shall not be so construed as to prevent the county board from once reconsidering their action on any claim, upon due notice to parties interested." It is insisted by respondents that this last section confers power upon county boards to reconsider their decisions made in passing upon accounts or demands against the county. It must be conceded that if such was the purpose of the legislature in framing the law, more apt or appropriate language could have been employed in expressing such object; nevertheless, we are convinced that the construction placed upon the section by respondents is the only proper one, when considered in the light of prior legislation, and the course of judicial decisions in this state previous to the adoption

of the act of 1879. The law as it stood prior to that year relating to the allowance of claims was substantially the same as the fifth subdivision of section 23 quoted above, except that it contained no provision similar to section 40 of the act of 1879; nor was any authority expressly or impliedly given for the reconsideration of claims by the county board. It had been decided in *Brown v. Otoe County*, 6 Neb., 111, under the statute then in force, which conferred upon county boards exclusive original authority "to examine and settle all accounts for the receipts and expenditures of the county, and allow all accounts chargeable against the county," that the decisions of such boards in the allowance or rejection of claims are conclusive unless reversed upon appeal. In other words, their decisions in that regard have the effect of judgments. It had also been ruled in at least two cases, previous to the act of 1879 that a county board possessed no authority to reconsider its adjudication of a claim. (*State v. Buffalo County*, 6 Neb., 454; *Kemerer v. State*, 7 Neb., 130.) It was those decisions which prompted the legislature to enact said section 40; and when its provisions are read in the light of those adjudications,—which should be done,—it is manifest that it was the intention to give power and authority to a county board to once reconsider its action upon a claim against a county upon notice to parties interested. Any other interpretation of the section would make its provisions entirely meaningless and nugatory. It is a familiar rule in the interpretation of statutes to ascertain the intention of the legislature and to give effect to such intent rather than to the literal sense of the terms employed by the law givers. (*Swearingen v. Roberts*, 12 Neb., 337.)

Relators argue that if the construction we have adopted is the proper one, then this section 40 is unconstitutional, because it encroaches upon the power conferred by the constitution on the judiciary. Ordinarily, the interpretation of statutes is for the courts; nevertheless, legislative construction of a law frequently controls as to sub-

sequent transactions. In the language of Frazier, C. J., in *Dequindre v. Williams*, 31 Ind., 444: "It is not ordinarily the function of the legislature to interpret statutes, nor is such interpretation binding upon the courts as to past transactions. But, as to matters occurring thereafter, such legislation guides all departments of the government. (Sedgwick, Constitutional Law, 253.) If a legislative construction be even plainly contrary to the terms of the act construed, it must, nevertheless, be taken as a new enactment, changing the old law." In the statute under consideration appears the legislative construction or definition of its provisions, and for that body to thus define its own language is not an invasion of the functions of the judicial branch of the government.

The law requires notice of the reconsideration by the board of its decision on a claim to be given the party interested. It is insisted that the statute in regard to notice was ignored, and for that reason the action of the respondents in reconsidering and in disallowing the claims was void. The referee finds that the evidence fails to show that relators had any notice of the pendency of the motion of reconsideration until after action was taken. It does, however, appear that Mr. Long, the attorney for relators in this matter, was notified that the board would take further action on the claims on a certain date, that he appeared in response thereto, and that at his request action was postponed until the next meeting of the board, at which time he again appeared before the board, and the claims were then rejected or disallowed. The appearance by relators' duly-constituted attorney was a waiver of the notice contemplated by statute.

The action of the relators in appealing from the disallowance of the claims to the district court, and in subsequently dismissing their appeal, constitutes a final adjudication, and leaves their claims standing disallowed. (*Richardson County v. Hull*, 24 Neb., 536.) The writ is denied.

WRIT DENIED.