L. J. VONTZ CONSTRUCTION CO., INC., A NEBRASKA CORPORATION, APPELLEE, V. CITY OF ALLIANCE, APPELLANT.

500 N.W.2d 173

Filed April 29, 1993.   No. S-90-717.

Walter R. Metz, Jr., of Brown & Brown, for appellant.

Arthur R. Langvardt for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

L. J. Vontz Construction Co., Inc. (Contractor), obtained a

jury verdict in its appeal of the denial of its claim against the City of Alliance (City) under Neb. Rev. Stat. § 16-726 (Reissue 1987) in which it sought damages under a contract for the construction of an asphalt-surfaced street located in Alliance. The City has appealed.

On April 28, 1983, the City and the Contractor entered into a contract whereby the Contractor agreed to construct approximately 1 mile of asphalt-surfaced road on Kansas Street in Alliance, Nebraska. The total contract consideration was $286,871.28. The parties agreed that the State Department of Roads (DOR) would act on behalf of the City and the federal government with the rights of inspection, general supervision, stopping of the work, assessing of work days, and other related items.

As originally bid, and as later required under the contract's notice to proceed, the Contractor was required to begin the project on August 22, 1983, and to complete the project within 25 working days. However, the Contractor did not begin to move equipment to the site until September 1 and did not complete the construction of its asphalt plant until October 21. The Contractor did not obtain the necessary approval of its asphalt "mix design" until November 3.

Since initial grading work had been performed by a different contractor in the fall of 1982 and the road had remained open during the winter, a preliminary survey of the site had been performed in July 1983 to determine the condition of the roadway.

Jerrold Gardner, DOR project manager, testified that after the survey was completed, he examined the road and found that no corrective action was necessary and the project was ready for construction. Gardner testified that he could see that there were ruts as a result of snow removal, but he knew that the surfacing contractor had to do subgrade stabilization and subgrade compaction, which involved putting on cohesive soil and blending it for 7 or 8 inches of depth, and that the specifications required the Contractor to reestablish the template on the project. Gardner further testified that the next survey of the area was done in late October when the Contractor was ready for curb stakes. Although the October survey revealed that

additional grade work needed to be done on about 15 percent of the project, Gardner stated that the condition of the subgrade had been what a contractor should expect to find and was perfectly normal for a road that had been under traffic for a year.

However, M.C. Schaff, a civil engineer testifying as an expert for the Contractor, stated his opinion, from studying the general specifications and the special provisions of the contract, that when the Contractor came on the job in 1983 it was entitled to expect that the subgrade was reasonably close to what it was designed to be and could expect that it would not have to cut any dirt or haul in any dirt to bring that subgrade to line and grade. Based on the record of the October survey, Schaff found that portions of the subgrade elevation varied beyond what a contractor could reasonably expect to find. He also testified that the fact that DOR issued a change order for some additional work on the subgrade in 1984 indicated to him that DOR had determined that the subgrade did not meet the limits to line and grade that it had anticipated.

The Contractor worked on the subgrade for 2 days, October 17 and 18. At that point the Contractor needed stakes to be set by DOR in order to do the final trimming. The survey revealed that the grade varied more than could be corrected with the trimming machine utilized for this operation. Gardner met with the Contractor's project supervisor, Louis Vontz, on November 1 to discuss the repair work and to negotiate a price for the additional work. Gardner decided not to execute a work order for the corrective work at that time, because no asphalt could be laid after November 1. Kenneth Gottula, construction engineer for DOR, testified that if the corrective subgrade work had been completed in the late fall of 1983 and left to lay over the winter, the freezing and thawing action during the winter months would likely have destroyed the contents of the subgrade. Although not permitted to proceed with the subgrade, the Contractor continued with curb construction until the middle of November 1983, when the project was shut down because of snow.

The necessary work order for the corrective grade work was issued in the spring of 1984, before the Contractor returned to

work on the project in May. Numerous problems caused delays in completion of the project. Asphalt work was completed on August 22, and cleanup continued until September 19. Although the project was originally scheduled as a 25-day project, the contract time allowance was overrun by 96 working days. The Contractor was granted an extension of 19 working days; 77 working days were attributed to the Contractor's failure to vigorously prosecute the work, and liquidated damages were assessed against the Contractor in the amount of $16,170. DOR, as agent of the City, issued final estimate 16, which adjusted the final contract amount due the Contractor with various additions and adjustments, some of which have been set forth above. This final figure was $321,890.58, which, it is assumed, was paid to the Contractor.

However, in an effort to recover the amount of the various deductions made and to secure additions which had been denied, and pursuant to § 16-726, the Contractor filed with the city clerk of the City on April 14, 1987, a claim for damages of $492,502.99 arising out of the contract. The claim was denied by the City on July 7, 1988, and the Contractor appealed to the district court for Box Butte County by filing its notice of appeal with the city clerk on July 26, 1988. Neb. Rev. Stat. § 16-727 (Reissue 1991) provides that

> when the claim of any person against the city . . . is disallowed in whole or in part by the council, such person may appeal from the decision of the city council to the district court of the same county by causing a written notice to be served on the city clerk within twenty days after making such decision . . . .

The Contractor then filed an amended claim with the city clerk on September 23, 1988. The amended claim was essentially the same claim as the original claim except that it included a request for an additional $32,816.73 in damages, for a total of $525,319.72. The city council denied the amended claim in a resolution dated October 6, 1988. The Contractor initiated its appeal of the denial of its amended claim by filing a notice of appeal with the city clerk on October 21, 1988.

Box Butte County District Court case Nos. 12131 and 12183, representing the appeal of the original claim and the appeal of

the amended claim respectively, were essentially the same lawsuit. The City filed pleas in abatement in both cases. On November 8, 1988, the district court ordered the Contractor to elect between the cases it had filed. On November 16, the Contractor's then attorney moved to dismiss its appeal of the original claim, case No. 12131, and the case was dismissed without prejudice by the district court on November 17.

The appeal of the amended claim, case No. 12183, was tried to a jury by present counsel, and the jury rendered a verdict in favor of the Contractor in the amount of $104,199.27. On April 26, 1990, the City filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion was overruled on July 17, 1990. The City appeals, assigning as error, in summary, that the district court erred in (1) failing to sustain the City's motion for judgment notwithstanding the verdict, since (a) upon the dismissal of its original claim against the City, the Contractor was barred from pursuing its amended claim under the theories of res judicata and collateral estoppel, (b) the court lacked jurisdiction over the Contractor's amended claim against the City, (c) the Contractor failed to state a cause of action against the City with regard to its amended claim; (2) failing to partially sustain the City's motion for judgment notwithstanding the verdict on the grounds that the Contractor waived any claim for additional compensation arising from extra work involved in constructing the median curbs because of the condition of the road grade, by virtue of its failure to file a written claim prior to commencing the work as required by contract specification § 109.05; and (3) failing to sustain the City's motion for new trial for the reason that prejudicial errors occurred at the trial which were duly excepted to, including (a) the court's failure to find that the Contractor waived any claim for additional compensation arising from extra work in construction of median curbs, by virtue of its failure to file a written claim prior to commencing the work, (b) the court's overruling the City's motion to exclude evidence of the Contractor's increased equipment-related costs because of misleading discovery responses by the Contractor, (c) the court's receiving into evidence the Contractor's financial statements for 1982-83, (d) the court's allowing Daniel Vontz to

give oral summaries of what the Contractor's records provided as to equipment-related costs, and (e) the court's allowing Daniel Vontz to testify as to his calculations of increased equipment costs of $47,083 attributable to each of the 3 months of delay it claimed the City's actions were responsible for, over the City's objections that these calculations were based upon inadmissible evidence erroneously received by the court, as described in the above assignments of error.

A civil jury verdict will not be disturbed on appeal unless clearly wrong. *Beauford v. Father Flanagan's Boys' Home*, 241 Neb. 16, 486 N.W.2d 854 (1992); *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). However, "[w]hen reviewing a question of law, an appellate court is obliged to reach a conclusion independent of the trial court's rulings." *Stack v. Sobczak, ante* p. 78, 80, 497 N.W.2d 374, 376 (1993). Whether a prior determination by an adjudicative agency is res judicata is a question of law.

The City first contends that the City's action on the original claim was a conclusive judgment against the Contractor, equating the City's action with analogous actions taken by county boards in cases such as *The State, ex rel. Clark v. Buffalo County*, 6 Neb. 454 (1877), and *State v. Baushausen*, 49 Neb. 558, 68 N.W. 950 (1896). For example, in *Buffalo County*, the relator applied for a writ of mandamus to compel the board of county commissioners to issue payment to the relator for a claim audited and allowed by the board. The county resisted the writ, arguing that the board had later reconsidered and did " 'reject, rescind, and annul' " the allowance of the claim. 6 Neb. at 459. Referring to the language of *Brown v. Otoe County*, 6 Neb. 111 (1877), the court noted that

> in the audit, adjustment, and allowance or disallowance of a claim against the county, the board acts judicially, and its judgment in the matter is conclusive, unless appealed from, or reversed on error in the mode prescribed by law. ... And it is also a well-established doctrine of the law that the board can only exercise such powers as are especially granted to it, or as are incidentally necessary to carry into effect the powers so granted.

6 Neb. at 460. Finding that no power had been conferred by law

upon the board to review its former adjudication, the court held that the proceedings of the board rescinding the adjudication of the relator's claim were not merely voidable, but simply void.

In *Baushausen*, the court reiterated the general rule that a board can exercise only such powers as are expressly granted, or necessarily implied in those expressly granted. The court further noted that a county board "has exclusive original jurisdiction to pass upon claims, and that in so doing it exercises functions judicial in their nature. The allowance or disallowance of a claim by the board has the force of a judgment until reversed or set aside." 49 Neb. at 564, 68 N.W. at 952. However, legislation passed in 1879, relating to counties and county officers, contained language which declared that " '[t]he provisions of this subdivision shall not be so construed as to prevent the county board from once reconsidering their action on any claim, upon due notice to parties interested.' " *Id.* The court found that while more apt or appropriate language could have been employed, that section did confer upon county boards the power to reconsider their decisions made in passing upon accounts or demands against the county. In *Baushausen*, the supervisors of Sherman County had allowed a claim but later reconsidered and disallowed it. Thus, in that case, where the relators had appealed the disallowance but later dismissed the appeal, the disallowance constituted a final adjudication.

The City asserts that municipal corporations may be equated with county boards for the purposes of applying the principles discussed above, citing *Gallaher v. City of Lincoln*, 63 Neb. 339, 88 N.W. 505 (1901). Although the issue in *Gallaher* involved a ministerial action, the court did equate the two entities in holding that "when a city council or a board of county commissioners audit[s] and adjust[s] the claim of an officer whose salary is prescribed by statute or by ordinance, they act ministerially, and not judicially." 63 Neb. at 342, 88 N.W. at 505. Thus, by implication, the judicial actions of city councils and county boards may be comparable as well.

The principle that a county board can exercise only those powers that are expressly granted or necessarily implied is

equally applicable to a municipal corporation. Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant. *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992); *Briar West, Inc. v. City of Lincoln*, 206 Neb. 172, 291 N.W.2d 730 (1980). As noted in *Baushausen*, county boards have been granted the authority to reconsider their actions on a claim; this authority is now codified as Neb. Rev. Stat. § 23-138 (Reissue 1991). Conversely, Neb. Rev. Stat. § 16-726 et seq. (Reissue 1987) contained no such authority. (Section 16-726 (Reissue 1991), as amended in 1990, and related statutes are similarly lacking in authority for reconsideration of council actions.)

This court has noted that

> [i]f a lower court does not have subject matter jurisdiction and, therefore, has no power to entertain the proceedings or decide a question, an appellate court lacks jurisdiction to review or evaluate an evidentiary determination for an act outside the jurisdiction of the court whose judgment or order is appealed.

*In re Interest of L.D. et al.*, 224 Neb. 249, 261, 398 N.W.2d 91, 99 (1986). See, also, *In re Estate of Krueger*, 235 Neb. 518, 455 N.W.2d 809 (1990) (an appellate court cannot acquire jurisdiction of a cause if the court from which the appeal was taken lacked jurisdiction).

Thus, in the instant case, the district court could acquire no jurisdiction of the appeal if the city council, functioning in a judicial manner in the allowance or disallowance of a claim, had no authority for reconsideration. While not explicitly denying the power to reconsider, the city council's resolution 88-34, denying the amended claim, at least suggests that reasoning obtained:

> WHEREAS, the City of Alliance on July 7, 1988, has already denied a Claim made by Vontz Construction Co., Inc., dated April 14, 1987, seeking recovery against the City under allegations of breach of the same Kansas Street improvement project contract by the City of Alliance . . . and
>
> WHEREAS, Vontz Construction Co., Inc. has pursued

> its rights to appeal the denial by the filing of a Notice of Appeal . . . with the City Clerk on July 26, 1988.
>
> NOW THEREFORE, BE IT RESOLVED that the Amended Claim made by Vontz Construction Co., Inc. . . . is hereby denied on the basis that the City Council has already acted upon and denied a claim supported by allegations making up the same purported cause of action.
>
> PASSED AND APPROVED this 6th day of October, 1988.

The City also argues that after the dismissal of an appeal of a claim disallowed by a political subdivision board, the disallowance is final, citing *In re Estate of Marsh*, 145 Neb. 559, 564, 17 N.W.2d 471, 475 (1945), which stated the general rule that " 'the dismissal of an appeal from an appellate court without an examination of the case upon its merits operates as an affirmance of the judgment appealed . . . .' " The court further noted that " '[t]he rule is upheld in a number of cases that the dismissal of an appeal by the appellate court operates as an affirmance of the judgment of the trial court . . . and that it is equivalent to an affirmance of the case on its merits.' " *Id.*

The Contractor argues that the existence of authority for reconsideration of a claim may be found in *State v. City of Minden*, 84 Neb. 193, 120 N.W. 913 (1909). In *City of Minden*, the relator had filed a claim against the city for $279.12. At a regular meeting of the mayor and council, the claim was allowed for $200, but the following day the action was reconsidered and the claim was rejected in its entirety. The court framed the question as "whether the mayor and council of a city of this class, after allowing a claim against the city, may, before such allowance is accepted by the claimant, reconsider their action and refuse to allow such claim." 84 Neb. at 194, 120 N.W. at 913. The court found that the reconsideration was proper and dismissed the relator's claim.

The City argues that *City of Minden* is inapplicable because it involved a city of the second class with a different claim disposition process than that found in § 16-726. Under the applicable statute, Comp. Stat. ch. 14, art. I, § 80 (1905), it was argued that "because the power to reconsider is not specifically granted, it does not exist." 84 Neb. at 194, 120 N.W. at 913. In

finding that reconsideration was proper, the court noted:

> While it is usual for legislative and deliberative bodies to regulate by special rule the time, manner, and by whom a motion to reconsider may be made, in the absence of such special rule on the subject, a motion to reconsider may be made at any time by any member, precisely like any other motion and subject to no other restriction. Cushing, Law and Practice of Legislative Assemblies (2d ed.), sec. 1266. Its power must, of course, be exercised with due consideration for the right of any third party who has, in reliance upon the action so rescinded, changed his position to his own disadvantage; but, before such right of third persons has accrued, a mayor and council may, if not restricted by the provisions of the charter or any rule adopted by them, reconsider previous votes and orders. 1 Dillon, Municipal Corporations (4th ed.), sec. 290. It may often happen that action may be taken in the allowance of claims against the city, which, upon subsequent consideration and in the light of further information, appears to have been improvident, ill-advised and unauthorized; and considerations of public welfare demand that the mayor and council of a city should be left free to correct such mistakes, so long, at least, as the claimant has not changed his situation to his disadvantage because of such action.

84 Neb. at 194-95, 120 N.W. at 913-14. Thus, the court did find that reconsideration was proper even in the absence of an express grant of authority. However, it should be noted that it did so in the context of a motion to reconsider made on the council's own initiative and in reconsideration of a claim which had previously been allowed. That case may also be distinguished by the fact that the allowance of a bill for less than the amount claimed was considered by the court to be an offer, which was not binding upon either party until it was accepted, and not a judgment. The court noted that the purpose of the claims statute was "to give to the governing body of the city an opportunity to audit and pay a claim deemed valid, before the city can be subject to the costs of an action to collect it." 84 Neb. at 195, 120 N.W. at 914. However, where the original claim has

been disallowed there has been no "offer," and as a result the governing body may be deemed to be acting in a judicial manner, its decision given the effect of a judgment.

Finally, the Contractor argues that since the action in the district court was an appeal, it could not have been permitted to enlarge its claim in that court beyond that upon which the City had had an opportunity to act. The Contractor contends that filing an amended claim was the only opportunity it had to clarify, correct omissions, or remedy oversights in its original claim. However, it should be noted that the claim made to the City on April 14, 1987, requested damages of $492,502.99, while the petition filed in the district court in the appeal of that claim on September 6, 1988, requested damages of $525,319.72, the exact amount of the amended claim made to the City on September 22, 1988. On October 3, 1988, the City moved to strike paragraphs 14 and 15 of the Contractor's petition, to the extent that it claimed damages beyond the amounts claimed in the claim filed with the City on April 14, 1987. In a journal entry dated October 11, 1988, the City's motion to strike was overruled by the district court.

Whether the Contractor could have amended its claim in district court is not relevant to a determination of this issue. The appeal of the claim denied was required to be tried de novo in the district court. "Such appeal shall be entered on the docket of the court, tried, and determined as appeals from justice courts . . . ." § 16-729 (Reissue 1987). However, a claim before a tribunal, be it an administrative agency or a municipal board, once decided and not appealed from, or if appealed and the appeal is dismissed, is res judicata and may not, as a general rule, be relitigated. See, generally, *In re Estate of Marsh*, 145 Neb. 559, 17 N.W.2d 471 (1945). "An unreviewed administrative hearing can'preclude later litigation of the same issues." *Scott v. Mattingly*, 241 Neb. 276, 281, 488 N.W.2d 349, 351-52 (1992). "Indeed, it may be said, inasmuch as the common council, being the auditing board of the city, has passed upon and adjudicated the claim, that it is res adjudicata, and that the present common council has no power to review the judicial action of the former common council." *Beresford v. Donaldson*, 103 N.Y.S. 600, 606, 54 Misc. 138, 147 (1907).

The Contractor having dismissed its appeal of the first denied claim before the city council of the City, the decision on that claim became final and is res judicata as to a subsequent claim based on the same set of facts. Accordingly, the district court was without jurisdiction to adjudicate a claim on appeal which had become final upon the dismissal of the first appeal. The judgment of the district court is reversed and the cause remanded with directions to dismiss the Contractor's cause of action.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

CAPORALE, J., not participating.