IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WILLBRAND ON BEHALF OF WILLBRAND-SANTOS V. SOTOLONGO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARVIN R. WILLBRAND AND JUDITH SANTOS DE WILLBRAND, ON BEHALF OF MARVIN A.
WILLBRAND-SANTOS, APPELLANTS,

V.

JORGE SOTOLONGO, M.D., AND METRO OB GYN, L.L.C., APPELLEES.

Filed June 11, 2024.    No. A-23-757.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Appeal dismissed.

Maria A. Vera for appellants.

Robert M. Schartz and Julie M. Ryan, of Abrahams Kaslow & Cassman, L.L.P., for appellees.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

This case concerns a medical malpractice action brought against a physician and his employer. After the case had been pending for over 2 years, the defendants (referred to hereafter as the appellees) filed a motion for summary judgment. The district court for Douglas County sustained the motion. The plaintiff patient, a minor child, appealed the order of summary judgment to this court, but later filed a motion to dismiss his appeal. This court granted the motion to dismiss, and the patient filed a new appeal of the same order, which is before us now. After reviewing the record, we find that we do not have jurisdiction to review this appeal because the dismissal of the original appeal operates as an affirmance of the district court's judgment.

- 1 -

BACKGROUND

*Factual Background.*

In 2016 and 2017, Judith Santos De Willbrand was pregnant and seeing Jorge Sotolongo, M.D., for prenatal care. On April 20, 2017, when the fetus was at 24 weeks of gestation, Judith attended a routine ultrasound appointment at Sotolongo's office. Sotolongo was not present for this appointment. A nurse practitioner named Hannah Feit, now known as Hannah Barrineau, performed the ultrasound and detected an abnormality with the fetus. Barrineau documented the abnormality in Judith's medical chart, noting that the test "show[ed] increased hypoechogenic area in [the fetus'] cerebral space, possible hydrocephaly." Barrineau indicated in the chart that Sotolongo would assess the fetus' status at Judith's next appointment.

On May 4, 2017, Judith attended a follow-up appointment. Sotolongo performed an ultrasound and confirmed that the fetus displayed signs of hydrocephalus and myelomeningocele. Hydrocephalus is a condition in which an excessive amount of fluid accumulates in the brain, and myelomeningocele is a condition where defects arise in the membranes of the brain and the spinal cord does not form or close properly. Sotolongo immediately contacted Michael J. Barsoom, M.D., a specialist in maternal fetal medicine. Sotolongo scheduled Judith an appointment with Barsoom for the following day.

Barsoom assessed Judith on May 5, 2017, and diagnosed her fetus with myelomeningocele. Barsoom informed Judith that the condition was typically repaired after birth, but that there was also a research project addressing the effectiveness of in-utero surgery. However, Judith was not eligible for the study because at the time of diagnosis, she was too far along in her pregnancy to undergo an in-utero procedure. Barsoom continued to provide Judith with prenatal care until the end of her pregnancy.

On June 26, 2017, Judith gave birth to her son, Marvin Arek Willbrand Santos (Marvin Jr.). Marvin Jr. was born with myelomeningocele and received treatment for that condition thereafter.

*Procedural History in District Court.*

On January 14, 2021, Judith and her husband, Marvin Ricardo Willbrand, as individuals and on behalf of their son, filed a complaint against Sotolongo and Metro OB/GYN, L.L.C., alleging medical malpractice. Specifically, they alleged that the appellees: (1) failed to diagnose Marvin Jr.'s condition earlier on in Judith's pregnancy; (2) failed to perform a timely body scan; and (3) failed to inform and counsel the family regarding the option of "maternal-fetal" surgery. Upon the appellees' motion to dismiss, the district court dismissed each parent's claims because the applicable statute of limitations had expired. In response, an amended complaint was filed that included only Marvin Jr.'s medical malpractice claims against the appellees. His allegations reiterated the three allegations listed above.

Our record indicates that several scheduling orders were entered in this case. The second amended scheduling order, which is the only one included in our record, states that Marvin Jr. was required to designate his expert witnesses by February 3, 2022. This scheduling order was agreed to by both parties and entered by the court.

On June 16, 2023, the appellees filed a motion for summary judgment. A hearing on the motion was set for July 12, 2023. In response, Marvin Jr. filed a motion to continue the summary judgment hearing. He contended that Barrineau's deposition was scheduled for July 12, that she was a key witness to his case, and that the appellees had "stonewalled" his earlier attempts to depose her. In his motion, Marvin Jr. also requested leave to designate an expert witness out of time.

On July 12, the court held a hearing on these motions. Through counsel, Marvin Jr. argued that Barrineau's deposition had occurred earlier that morning and because the transcript was not readily available, the summary judgment hearing should be continued. He further argued that a fact witness, Mark J. Puccioni, M.D., was recently discovered to have information that would be considered expert witness testimony and requested leave to redesignate him as such.

The appellees opposed both of Marvin Jr.'s motions. They argued that Barrineau's deposition testimony was identical to the information contained in the undisputed facts. Further, they argued that their summary judgment motion was based on a lack of expert testimony regarding causation and damages and that Barrineau's testimony did not relate to these issues. As for the motion for leave to designate an expert witness, the appellees asserted that it was far past Marvin Jr.'s designation deadline and that no good cause existed to grant his motion.

When the matter was submitted, the court noted that Marvin Jr. failed to present support for his motion to continue in the form of an affidavit as required by Neb. Rev. Stat. § 25-1335 (Reissue 2016). The court elaborated that even if Marvin Jr.'s continuance request was presented by way of affidavit, he nonetheless failed to demonstrate that excusable neglect existed to grant his request or allow him to designate an expert witness out of time. Consequently, the court denied both of Marvin Jr.'s motions.

The district court then took up the motion for summary judgment. The appellees offered various exhibits in support of their motion, including pleadings, discovery documents, depositions from various doctors, and an affidavit of the appellees' expert, Michael Levine, M.D., stating that in his expert opinion, Sotolongo and Metro OB/GYN did not proximately cause any of Marvin Jr.'s current medical conditions. Marvin Jr. did not offer any rebuttal evidence.

The appellees argued that generally, to establish a prima facie case of medical malpractice, an expert witness must testify to each of the four elements: duty, breach, causation, and damages. They alleged that Marvin Jr. had only designated a standard of care expert and failed to designate experts who rendered opinions on the causation and damages elements and could rebut the opinion of Levine. Thus, as Marvin Jr. failed to designate all necessary expert witnesses before the court-ordered deadline expired, the appellees asked the court to sustain their motion for summary judgment.

Marvin Jr. argued that his standard of care expert testified to the issues of causation and damages during his deposition. Marvin Jr. first pointed to his expert's reference to studies comparing the functionality of children born with myelomeningocele who did not have in-utero surgery with children born with myelomeningocele who had in-utero surgery. Marvin Jr. argued that this study showed that a child's mobility was affected by the type of care he or she received. Additionally, Marvin Jr. argued that his expert opined that if Judith had been referred to a specialist earlier in her pregnancy, she would have been eligible for in-utero surgery. Marvin Jr. asserted that this belief established his damages.

The court took the matter under advisement. On August 28, 2023, the court issued its order sustaining the appellees' motion for summary judgment. At the outset, the court found that

there [was] no evidence before the Court as to what [Marvin Jr.'s] diagnoses entail[ed], how they affect[ed] [Marvin Jr.], or what [Marvin Jr.'s] medical needs [were]. Neither [was] there evidence . . . of what [Marvin Jr.'s] postnatal surgery entailed or how undergoing the in-utero surgery would have resulted in a better outcome for [Marvin Jr.]

The court found that Marvin Jr. did not offer any evidence on how the medical studies referenced by his standard of care expert were related to his own alleged injuries or how in-utero surgery would have improved his current condition.

The court ultimately determined that:

[t]he evidence indicates that even if [Marvin Jr.] had undergone the in-utero surgery, he likely would still have issues associated with his defects with which he was born. In-utero surgery . . . offers a statistical improvement in certain areas. Thus, a fact finder would be left to speculate that had [the appellees] diagnosed [Marvin Jr.'s] conditions at 20 weeks as alleged, in-utero surgery would have improved the conditions from which he suffers. This would require the fact finder to ascertain the extent of [Marvin Jr.'s] injuries, what was corrected by [Marvin Jr.'s] postnatal surgery, and what could have been improved had [Marvin Jr.] undergone in-utero surgery, all without any sort of evidence specific to [Marvin Jr.] on these issues. There is no evidence, expert or otherwise, that establishes that [the appellees'] alleged breaches resulted in the injuries alleged by [Marvin Jr.]

For these reasons, the district court concluded that Marvin Jr. failed to establish the causal link between his injuries and the appellees' alleged negligence. Having concluded that an essential element of the claim was not proven and that all other facts were rendered immaterial, the court sustained the motion for summary judgment. Marvin Jr.'s claims were dismissed with prejudice.

*Procedural History in Appellate Courts.*

On September 26, 2023, Marvin Jr. filed a notice of appeal in the district court and paid the accompanying statutory docket fee. In his notice, Marvin Jr. referenced Neb. Rev. Stat. § 48-182 (Reissue 2021), which specifies the appeal process from a final order of the Nebraska Workers' Compensation Court. Noticing his error, Marvin Jr. filed an amended notice of appeal on the same day pursuant to Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2022), which specifies the appeal procedure to be followed in appeals from the district court in civil cases. Our record shows that Marvin Jr. did not request a bill of exceptions simultaneously with either notice of appeal.

The following day, the clerk of this court issued a letter stating that the court had received and filed the notice of appeal and that no request to prepare a bill of exceptions was received. The letter further stated that "[f]ailure to file such a request at the same time the notice of appeal is filed shall be deemed as a waiver of Appellant of the right to request a bill of exceptions." That same day, Marvin Jr. filed a motion requesting that this court dismiss his appeal "without prejudice." In addition, on September 28, 2023, Marvin filed a third notice of appeal in the district court. With this third notice, Marvin Jr. simultaneously requested a bill of exceptions.

On October 12, 2023, this court filed a minute entry granting Marvin Jr.'s motion to dismiss his original appeal. On November 14, we issued a mandate to the district court stating that the appeal had been dismissed and that the court "shall, without delay, proceed to enter judgment in conformity with the judgment of this court." On November 16, the district court entered an order pursuant to our mandate. The order states that "[p]ursuant to [the] mandate from the Nebraska Court of Appeals, the appeal from the judgment rendered by the District Court has been dismissed by the Nebraska Court of Appeals."

The appeal now before us arises from Marvin Jr.'s third notice of appeal.

## ASSIGNMENTS OF ERROR

Marvin Jr. assigns, summarized and restated, that the district court erred when it (1) denied his motion to continue the summary judgment hearing, (2) denied his motion for leave to designate an expert witness out of time, and (3) sustained the appellees' motion for summary judgment.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, the issue is a matter of law. *Paw K. v. Christian G.*, 315 Neb. 781, 1 N.W.3d 467 (2024).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Simpson v. Lincoln Public Schools*, 316 Neb. 246, 4 N.W.3d 172 (2024). The appellees assert that this court lacks jurisdiction because Marvin Jr.'s original appeal was dismissed, and this appeal is subject to that dismissal.

Before reaching the merits of the appellees' jurisdictional argument, we provide a brief background on appeals and appellate jurisdiction. Section 25-1912(1) sets forth the procedure for perfecting an appeal and requires that the appellant file a notice of appeal and a docket fee (except as provided in the in forma pauperis statutes) within 30 days after the judgment, decree, or final order. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). Subsection (4) of § 25-1912 sets forth that the appeal shall be deemed perfected when such notice of appeal has been filed and the docket fee (except as provided by the in forma pauperis statutes) has been deposited in the office of the clerk of the district court. The statute goes on to provide that "no step other than the filing of such notice of appeal and the depositing of such docket fee shall be deemed jurisdictional."

Under Neb. Ct. R. App. P. § 2-105(B)(2)(a), an appellant must file a request to prepare a bill of exceptions in the office of the district court clerk at the same time the notice of appeal is filed. Failure to file such a request simultaneously with the notice of appeal shall be deemed as a waiver by the appellant of the right to request a bill of exceptions, unless the appellate court grants the appellant leave to request a bill of exceptions out of time. *Id.*

In this case, Marvin Jr. did not request a bill of exceptions simultaneously with the filing of his first notice of appeal or his second amended notice. Marvin Jr. also did not seek leave from this court to request a bill of exceptions out of time. Instead, he filed a motion to dismiss his original appeal. This court sustained Marvin Jr.'s motion to dismiss and, pursuant to our mandate, the district court entered an order reflecting the dismissal. Marvin Jr.'s third notice of appeal, filed while his original appeal was pending dismissal, was filed simultaneously with a request for a bill

of exceptions. We infer from these events that Marvin Jr. dismissed his previous appeal and then filed again in an attempt to remedy his failure to request a bill of exceptions with his first two notices of appeal.

Unfortunately for Marvin Jr., the dismissal of his first appeal prohibits us from reviewing the appeal before us now. The dismissal of a properly perfected appeal from an appellate court without an examination of the case upon its merits operates as an affirmance of the judgment appealed or attempted to be appealed from. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). See, also, *L. J. Vontz Constr. Co. v. City of Alliance*, 243 Neb. 334, 500 N.W.2d 173 (1993); *In re Estate of Marsh*, 145 Neb. 559, 17 N.W.2d 471 (1945). Claims contained in these types of cases are res judicata and generally may not be relitigated. See, *State v. Greer, supra*; *L. J. Vontz Constr. Co. v. City of Alliance, supra*; *In re Estate of Marsh, supra*.

Marvin Jr.'s original appeal was perfected on September 26, 2023, when the notice of appeal was filed and the docket fee was deposited. Marvin Jr. asserts that his first appeal was not perfected, but he does not explain what barred perfection in that instance. We likewise are unable to find any basis from which we can conclude that his prior appeal was not perfected. We note that according to § 25-1912, the request for a bill of exceptions or lack thereof does not affect the perfection of an appeal.

Pursuant to Marvin Jr.'s motion to dismiss, our dismissal of his original, perfected appeal was without an examination of the case upon its merits. Therefore, the dismissal operates as an affirmance of the district court's order granting summary judgment for the appellees. Any claim Marvin Jr. has concerning that order of summary judgment is res judicata and may not be relitigated. Because the appeal before us concerns that order, we lack jurisdiction over this appeal.

Finally, we acknowledge that Marvin Jr.'s counsel requested that this court dismiss his original appeal "without prejudice." However, Marvin Jr. provides us with no authority that a dismissal of an appeal to an appellate court can be without prejudice, and we can find none. In fact, the pertinent case law appears to say the opposite. Based on our analysis, we can only conclude that Marvin Jr.'s request for dismissal without prejudice was inconsistent with applicable law. Thus, having requested that the appeal be dismissed, Marvin Jr. cannot now claim that he can nonetheless confer jurisdiction on this court via a new appeal.

CONCLUSION

Having determined that we lack jurisdiction, this appeal is dismissed.

APPEAL DISMISSED.