LESLIE S. KAPLAN, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

First District (4th Division)   No. 76-362

Opinion filed March 10, 1977.—Rehearing denied April 13, 1977.

Herbert N. Sirott, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff appeals from the revocation by the Department of Registration and Education of his license to practice medicine because of his conviction of a felony. While the plaintiff raises several constitutional questions, most of which are very tenuous, the only serious issue before this court is whether the Department, before revoking Dr. Kaplan's license, was required to find that he had not been sufficiently rehabilitated and, if it was, must this court reverse and remand the proceedings since there was no express finding as to lack of rehabilitation.

In September 1970, the plaintiff, Kaplan, was found guilty in the Federal court of five counts of mail fraud (18 U.S.C. § 1341 (1970)), and one count of conspiracy (18 U.S.C. § 371 (1970)), and sentenced to serve three years' imprisonment on each charge, the sentences to run concurrently, and fined $15,000. The conviction stemmed from a scheme to defraud several insurance companies, by arranging "fake automobile and pedestrian accidents," having the participants visit Kaplan's office and causing fraudulent medical reports to be prepared and sent to the insurance companies. The Court of Appeals in 1972 reversed the conviction on one of the counts because of perjured testimony and remanded for a new trial. It, however, ruled that the convictions under the other counts were not tainted by the perjured testimony. It further ruled that testimony from the alleged "victims" of the accidents, from the lawyers retained by the victims and from other participants in the schemes, in addition to documentary evidence consisting of Kaplan's records of patients' visits and medical reports, readily sustained his conviction on the other counts.

This was not the first time that Kaplan had been in trouble, although apparently the first time his conduct amounted to a criminal offense. In April 1955, Kaplan was suspended from participation in the Medical Assistance Program on the basis of irregularities in his billing practice which consisted of billing for excessive office visits and drugs, and billing in his own name for services provided by resident physicians who covered his office and his associate's office during the night. In addition, it appears from the report prepared for the State Medical Advisory Committee Meeting, that after Kaplan had been suspended from participation in the Medical Assistance Program in October 1968 because of the pending Federal prosecution, he continued to own and operate his two large medical centers in the severely depressed area on the west side of Chicago. In operating these centers he employed several physicians

and dentists, paid them weekly on a percentage basis, and himself collected the monies from the Department of Public Aid, although he had been suspended. These billings were submitted to the Department in the names of the individual practitioners.

On June 4, 1971, action was brought by the Department to revoke or suspend Kaplan's license because of the felony conviction. The first appearance before the Medical Committee was on July 8, 1971. Both Kaplan and his attorney (not the present one) were present. Kaplan, through his attorney, asked that the proceedings be continued since the convictions were being appealed. He indicated that if the Court of Appeals ruled against him there would be no contest. The Committee agreed to his request to continue the proceedings. Likewise, on November 18, 1971, this cause was again continued at Kaplan's request for the same reason. So, too, in March, 1972. At that time Kaplan through his attorney specifically stated:

> "I am asking that the matter be continued again for the reason that * * * I have stated it before * * * if this conviction is affirmed, that is the end of it, there would be no contest as to whether or not the Department wants to revoke his license or suspend it; there will be no defense."

On September 13, 1973, the cause was finally heard. Needless to say, since Kaplan's conviction had been affirmed, he was not personally present; he was in prison. His attorney was, however, present, as was his wife who appeared as a witness for him. His attorney again asked for a continuance, this time because Kaplan, being incarcerated, could not appear. Not surprisingly, after all this time, the request was denied. It was pointed out that the plaintiff had earlier agreed that if the convictions were affirmed, there would be no defense. It is clear from the record that Kaplan's attorney was permitted to present whatever evidence he desired that might affect the Committee in the exercise of its discretion. In arguing that Kaplan's license should not be revoked, the attorney did argue that rehabilitation had been shown because Kaplan had not touched an accident case in five years, and there had been no complaint against him since the indictment. His basic argument, however, was that the license should not be revoked because perjury had been used to obtain the conviction.

The Committee found Kaplan had been convicted of a felony in the Federal court and recommended that his license to practice medicine be revoked. Kaplan then moved for a rehearing before the Director. This proceeding was continued until Kaplan could be personally present.[1] At the rehearing there was considerable discussion of the fact that under the

---

[1] The motion for rehearing is not in the record so it is impossible for the court to determine what grounds were raised in the motion.

Medical Practice Act, as amended (effective July 23, 1971), the Department could revoke a physician's license only if it determined, after investigation, that the person had not been sufficiently rehabilitated to warrant the public trust. As "evidence of rehabilitation" Kaplan's attorney pointed out that he had been paroled in about the minimum time. Also Kaplan testified that, while he was still practicing as a doctor, he had not seen any personal injury cases since the date of his indictment. The Director indicated that he believed the issues were whether he should consider evidence of rehabilitation and whether Kaplan had, in fact, been rehabilitated; that if there was further evidence of rehabilitation it should be entered into evidence.

The Director affirmed the recommendation of the Committee, finding that substantial justice had been done. The circuit court also affirmed.

## I.

■■■ Kaplan's contention that section 5—5—5(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—5(d)), is applicable to prevent the suspension of his license since he completed his sentence of imprisonment is without merit. By its own term, that statute merely acts to *restore* licenses which have been revoked because of a conviction; it does not act to bar their initial revocation. Thus, under the facts, the statute is clearly inapplicable to Kaplan at present. We need not, therefore, determine whether the statute was intended to be applicable to such professions as the legal and medical professions; whether, if so, the statute overrules the specific statute in the Medical Practice Act relating to the restoration of licenses; and, if so, whether such restoration is automatic, as the plaintiff seems to contend, or only after petition and hearing. We only note that a construction allowing the automatic restoration of a lawyer's or doctor's license, where his right to practice his profession was taken away because of a conviction involving moral turpitude, without the Supreme Court or Department, respectively, having notice would seem to be against public policy.

## II.

Plaintiff's basic contention is that the 1971 amendment of section 16(4) of the Medical Practice Act (Ill. Rev. Stat. 1971, ch. 91, par. 16a(4)), allowing the Department to revoke a license for the conviction of a felony only if it determined the person had not been sufficiently rehabilitated to warrant the public trust, should have been applied and was not. The offenses were committed years before the effective date of the amendment; the conviction occurred about 10 months before. The proceedings to revoke Kaplan's license began before the effective date of the act. They were only continued because the plaintiff sought the continuances. The parties have cited no cases in point and we have found

none. Nevertheless, section 4 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1975, ch. 131, par. 4), clearly provides that no new law shall repeal a former law as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued *or in any way whatever* to affect any such offense or act so committed or any penalty, forfeiture or punishment so incurred. (Emphasis supplied.) Were we to hold that although the proceedings were commenced before the effective date of the act and were only continued at the request of the plaintiff and for his benefit, nevertheless the Department was required to determine whether Kaplan had been rehabilitated, although if the proceedings had been completed before July 23 no such determination was necessary, we would be allowing the amendment to affect the offense committed and the penalty incurred before the amendment arose.

■■ The plaintiff, however, contends that the amendment should be applied as it was merely meant to clarify and codify the law. The presumption, however, is that a statutory amendment is intended to change the law. (*Scribner v. Sachs* (1960), 18 Ill. 2d 400, 161 N.E.2d 481.) While this presumption is not conclusive, and may be overcome by more persuasive considerations (*Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6, 319 N.E.2d 37, *cert. denied*, 421 U.S. 914, 43 L. Ed. 2d 780, 85 S. Ct. 1573), there are no such compelling considerations here.

■■ Even if we were to find that the amendment was applicable to the proceedings, the plaintiff would not be entitled to a reversal. The plaintiff was given ample opportunity both before the Committee and before the Director to introduce any available evidence as to rehabilitation. Indeed, the Director indicated he wanted any evidence of rehabilitation put in the record. Yet the only evidence as to rehabilitation in the record was that (1) Kaplan was placed on parole, (2) Kaplan had the prudence after the indictment for fraud in connection with personal injury cases to avoid handling personal injury cases. This hardly establishes that Kaplan, who had already been suspended once before from participation in the Medical Assistance Program for irregularities in his billing practices, had decided to refrain from all kinds of fraudulent activities, whether illegal or merely unethical. We recognize that the Committee failed to make any finding as to rehabilitation. However, even if we were to find the amendment applicable, this failure would not, under the facts of this case, justify a reversal since there was no evidence in the record to justify a finding of rehabilitation.

■■ It must also be noted, although the point was not raised by the Department, that the plaintiff repeatedly, when asking for continuances, stated that the sole issue before the Committee was whether he had been convicted of a felony, and that if the convictions were affirmed he would

put on no defense. It is, therefore, not surprising that the Committee in its findings made no reference to the lack of rehabilitation despite Kaplan's attorney's half-hearted attempt to raise the issue at the last minute. We also note that had Kaplan not indicated that he was waiving all defenses, the Department could have, if it had chosen to, upon proper notice and a hearing, revoked his license for engaging in dishonorable or unethical conduct of a character likely to deceive or defraud the public. (Ill. Rev. Stat. 1971, ch. 91, par. 16a(4).) To that charge, alleged rehabilitation is no defense.

### III.

■■ ■ While the plaintiff's constitutional arguments are difficult to follow, it would appear that he is contending that the revocation violated the due process and equal protection guaranties of the constitution and placed the plaintiff in double jeopardy. This is so, plaintiff argues, because no connections between the conviction of the doctor and the purpose of the Medicaid Act exists and the doctor has been rehabilitated. The practice of medicine in Illinois is lawfully prohibited by the State except on the conditions it imposes, and the State's legitimate concern for maintaining high standards of professional conduct extends beyond the initial licensing. (*Barksy v. Board of Regents* (1954), 347 U.S. 442, 98 L. Ed. 829, 74 S. Ct. 650.) The practice of medicine, in addition to skill and knowledge, requires honesty and integrity of the highest degree, and inherent in the State's power is the right to revoke the license of those who violate the standards it set. This revocation proceeding is not a second criminal proceeding placing the physician in double jeopardy. (*Younge v. State Board of Registration* (Mo. 1969), 451 S.W.2d 346, *cert. denied*, 397 U.S. 922, 25 L. Ed. 2d 102, 90 S. Ct. 910 (physician acquitted in criminal prosecution not placed in double jeopardy). See also *Helvering v. Mitchell* (1938), 303 U.S. 391, 58 S. Ct. 630, 82 L. Ed. 917 (court discussing and giving illustrations of various "remedial" sanctions, including disbarment).) Rather, the purpose is to maintain sound, professional standards of conduct for the purpose of protecting the public and the standing of the medical profession in the eyes of the public. 61 Am. Jur. 2d *Physicians, Surgeons, and other Healers* § 44 (1972).

■■ It has long been the law that the conviction of a criminal offense or felony is a sufficient ground for revocation of a physician's license, even where the offense is not related to the profession itself (*Barsky v. Board of Regents* (1954), 347 U.S. 442, 98 L. Ed. 829, 74 S. Ct. 650; 61 Am. Jur. 2d *Physicians, Surgeons, and other Healers* §§ 57, 59 (1972); Annot., 12 A.L.R. 3d 1213 (1967); compare *Bruni v. Department of Registration and Education* (1974), 59 Ill. 2d 6, 319 N.E.2d 37, *cert. denied*, 421 U.S. 914, 43 L. Ed. 2d 780, 85 S. Ct. 1573), where revocation for a conviction for

passing counterfeit Federal Reserve Notes was upheld (this point, however, not being discussed by the court). However, the submitting of false and exaggerated medical reports is clearly an act constituting fraud or deceit in the practice of medicine (*Wassermann v. Board of Regents* (1962), 11 N.Y. 2d 173, 227 N.Y.S. 2d 649, 182 N.E.2d 264, *appeal dismissed*, 371 U.S. 23, 9 L. Ed. 2d 96, 83 S. Ct. 121), and has on many occasions been found to justify the revocation of the physician's license. (*Wassermann;* Annot., 95 A.L.R.2d 873 (1964).) No closer connection to the medical profession is required.

## IV.

Plaintiff's argument that the statute is too broad since it includes every theft of over $150 is irrelevant since the crimes here were not of such a "minor" character. Nevertheless, his contention is completely answered by the United States Supreme Court in *Barsky v. Board of Regents*[2] (1954), 347 U.S. 442, 452, 453, 98 L. Ed. 829, 839-40, 74 S. Ct. 650, 656-57:

> "This statute is readily distinguishable from one which would require the automatic termination of a professional license because of some criminal conviction of its holder. Realizing the importance of high standards of character and law observance on the part of practicing physicians, the State has adopted a flexible procedure to protect the public against the practice of medicine by those convicted of many more kinds and degrees of crime than it can well list specifically. It accordingly has sought to attain its justifiable end by making the conviction of any crime a violation of its professional medical standards, and then leaving it to a qualified board of doctors to determine initially the measure of discipline to be applied to the offending practitioner.
>
>           *　 　 　*
>
> The above provisions, on their face, are well within the degree of reasonableness required to constitute due process of law in a field so permeated with public responsibility as that of health."

## V.

■■ ■ The plaintiff also contends that he was denied due process since the September 1973 hearing was held in his absence. We do not agree with the Department's contention that since the hearing conformed with the statutory requirement that either the accused or his counsel be present (Ill. Rev. Stat. 1971, ch. 91, par. 16b.02), the plaintiff could not have been denied due process. A statute does not necessarily define what

---

[2] In *Barksy*, unlike here, the conviction which caused the physician's license to be suspended was only a misdemeanor under Federal law, was not a criminal offense under the law of New York and did not involve moral turpitude.

is due process. However, we need not decide whether the conducting of a revocation proceeding while the accused physician is unable to attend because he is in prison is a violation of due process if his attorney is present. A physician may waive his right to be present. (*State ex rel. Weathers v. Davis* (1940), 143 Fla. 250, 196 So. 487.) Clearly Kaplan waived his right to be personally present when he requested the Committee to continue the proceedings until after the decision by the Court of Appeals, knowing, of course, that if the court affirmed, he would no longer be able to be present since he would be in prison.

## VI.

■■ The plaintiff's contention that, since there are no rules and regulations for the administration of Section 16 of the Medical Practice Act, the agency was improperly creating law is totally without merit. Since the area is defined by statute, no rules and regulations are needed to explain for what criminal violations a license may be revoked. "The professional standard is clear. The discretion left to enforcing officers is not one of defining the offense. It is merely that of matching the measure of the discipline to the specific case." *Barsky v. Board of Regents* (1954), 347 U.S. 442, 448, 98 L. Ed. 829, 838, 74 S. Ct. 650, 654.

■■ Lastly, the plaintiff contends that since the report of proceedings for September 13, 1973, fails to list the names of the members of the Medical Examining Committee, there is no way of knowing if the Committee conformed to the statutory requirements. However, the report of proceedings reveals that it was noted for the record that the Committee which would hear the matter was properly constituted. Plaintiff's attorney, who was present, made no objection.

For the foregoing reasons, the order of the Department revoking the plaintiff's license is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.