885 P.2d 156

Herbert L. SCHILLERSTROM, Jr., D.C., Plaintiff–Appellee, Cross Appellant,

v.

STATE of Arizona, and Board of Chiropractic Examiners, James J. Badge, D.C., Chairman, Philip L. Pierce, D.C., Vice Chairman, David J. Brotman, D.C., board member, and Carolyn Gunter, board member, Defendants–Appellants, Cross Appellees.

No. 1 CA–CV 92–0251.

Court of Appeals of Arizona, Division 1, Department B.

July 26, 1994.

Review Denied Dec. 20, 1994.

Thinnes & Miller, P.A. by Thomas A. Thinnes and Eleanor L. Miller, Phoenix, for plaintiff-appellee, cross appellant.

Grant Woods, Atty. Gen. by Montgomery Lee, Asst. Atty. Gen. and Julie C. Tolleson,

Asst. Atty. Gen., Phoenix, for defendants-appellants, cross appellees.

OPINION

KLEINSCHMIDT, Judge.

The State Board of Chiropractic Examiners appeals from the superior court's reversal of the Board's order revoking Herbert Schillerstrom's chiropractic license. Schillerstrom cross-appeals from a ruling that the revocation did not violate the double jeopardy clause of the Fifth Amendment. We hold that the claim of double jeopardy has no merit. We reverse because the sanction the Board imposed was not excessive, and the superior court impermissibly substituted its own judgment for that of the Board in holding to the contrary.

## FACTS AND PROCEDURAL HISTORY

Schillerstrom was a chiropractor who practiced in Glendale. In April 1990, the State Board of Chiropractic Examiners filed a complaint charging him with twenty-eight instances of unprofessional conduct of a character likely to deceive or defraud the public or tending to discredit the profession. Such conduct is grounds for censure, or for the suspension or revocation of a practitioner's license. Ariz.Rev.Stat.Ann. ("A.R.S.") § 32–924(A)(6).[1] The gist of the complaint was that Schillerstrom submitted false bills to insurance companies for treatments he had not actually rendered. Two months after the Board filed its complaint, the grand jury indicted Schillerstrom on twelve counts of fraud arising out of the same conduct on which the complaint was based.

A warrant was issued for Schillerstrom's arrest on the indictment, and on July 3, 1990, Schillerstrom voluntarily complied with a deputy sheriff's request that he go to the sheriff's office to "sign some papers." While there, he was fingerprinted and photographed. Apparently at the same time, Schillerstrom's attorney appeared before a judge and secured his release on his own recognizance.

In November 1990, while the criminal charges were pending, Schillerstrom submitted an application for renewal of his chiropractic license. The application asked: "Have you ever been arrested, charged or convicted of a misdemeanor involving moral turpitude or of a felony?" Schillerstrom answered "no" to this question.

In April 1991, Schillerstrom pled guilty to attempted insurance fraud, a violation of A.R.S. section 44–1220, a class 6, open-ended felony. He agreed to pay restitution, and it was specified that the offense would be treated as a felony but could, in the court's discretion, be designated a misdemeanor upon the successful completion of probation. The plea agreement also contained the warning that the conviction might impact Schillerstrom adversely in any civil or administrative action that might be pending against him.

In May 1991, Schillerstrom appeared for sentencing and was placed on probation. His probation officer was to monitor Schillerstrom's business practices. Although the court could have revoked his license to practice as a chiropractor, A.R.S. section 13–603(G), it did not do so.

About a week after Schillerstrom was sentenced, the Board amended its complaint to allege that Schillerstrom had attempted to renew his license through fraud or deceit and that he had been convicted of a felony or a misdemeanor involving moral turpitude. Under A.R.S. sections 32–924(A)(1) and 32–924(A)(6), such charges, if proven, constitute grounds to censure a chiropractor or to suspend or revoke his license.

The Board held a hearing on the complaint in October 1991, and Schillerstrom stipulated that he had committed the false billings as alleged in the original and amended complaints. In mitigation, Schillerstrom testified that at the time the violations occurred, he had been going through a difficult divorce and had been training a new office assistant. He denied falsifying his renewal application, asserting that when he filed it he did not realize he had been arrested, and he did not

---

1. Effective September 27, 1990, the section was renumbered A.R.S. § 32–924(A)(5). Laws 1990, Ch. 175, § 9.

know he had been charged with either a felony or a misdemeanor involving moral turpitude.

The Board found that Schillerstrom had submitted the false bills, that he had been indicted and a warrant for his arrest had been issued, that he had been placed under arrest on July 3, 1991, that he had pled guilty to a felony and that he had filed a false renewal application. The Board concluded that Schillerstrom, in submitting false bills, had engaged in unprofessional conduct of a character likely to deceive or defraud the public or tending to discredit the profession and that he had been convicted of a felony or of a misdemeanor involving moral turpitude. The Board also concluded that Schillerstrom had employed fraud or deceit in securing a license. It voted unanimously to revoke his license.

Schillerstrom filed an action in the superior court, seeking review of the Board's action. After briefing, the court held:

> The Court does not accept plaintiff's double jeopardy argument and, therefore, denies relief on that basis.
>
> Regarding the substantive due process argument, the Court finds as follows:
>
> 1. that the State's action implicates a protected liberty interest, and
>
> 2. that the State's action was clearly excessive in response to the problem addressed, when the facts were properly analyzed and correlated, and
>
> 3. revocation of the license violated substantive due process.

The court reversed the license revocation and remanded the matter to the Board "for reconsideration of the appropriate remedial action to be taken." We first consider the double jeopardy argument raised on the cross-appeal because the narrow issue it presents is one of first impression in Arizona.

### THE LICENSE REVOCATION DID NOT OFFEND THE PROHIBITION AGAINST DOUBLE JEOPARDY

Schillerstrom claims that the prohibition against double punishment found in the Fifth Amendment to the United States Constitution precludes the revocation of his license to practice as a chiropractor because the revocation was based on the same conduct for which he had already been punished under the criminal law. Civil sanctions which serve the goals of deterrence and retribution, as opposed to sanctions which have a remedial purpose, can bring the prohibition against double punishment into play. *Taylor v. Sherrill*, 169 Ariz. 335, 343, 819 P.2d 921, 929 (1991) (citing *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)); *State v. Nichols*, 169 Ariz. 409, 412, 819 P.2d 995, 998 (App.1991).

While there is no Arizona case directly on point, numerous decisions from other jurisdictions have held that the double jeopardy clause does not prevent the revocation of a professional license for conduct which also gave rise to a criminal conviction. For example, in *Kaplan v. Department of Registration and Educ.*, the court rejected the very claim Schillerstrom makes in the case before us, saying:

> This revocation proceeding is not a second criminal proceeding placing the physician in double jeopardy ... Rather, the purpose is to maintain sound, professional standards of conduct for the purpose of protecting the public and the standing of the medical profession the eyes of the public. 61 Am Jur.2d Physicians, Surgeons, and other Healers., § 44.

46 Ill.App.3d 968, 5 Ill.Dec. 303, 308, 361 N.E.2d 626, 631 (1977) (some citations omitted).

Another explanation of why the ban against double punishment does not preclude the revocation of Schillerstrom's license was articulated in the case of *Matter of Rabideau*, 102 Wis.2d 16, 306 N.W.2d 1, *appeal dismissed*, 454 U.S. 1025, 102 S.Ct. 559, 70 L.Ed.2d 469 (1981), dealing with the disbarment of an attorney following his conviction of a felony. The court observed that disciplinary sanctions are not punishment and went on to say:

> Rather, the primary purpose of a disciplinary proceeding is the ascertainment of moral fitness and professional competency of the attorney, and a determination of whether it is necessary for the protection

of the public interest that the attorney be disciplined, suspended, or disbarred. These are public interests not addressed by the underlying criminal proceeding.

102 Wis.2d at 26, 27, 306 N.W.2d at 7 (citations omitted); *see also Allen v. Louisiana State Bd. of Dentistry,* 603 So.2d 238 (La.Crt. App.1992); *Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023 (5th Cir. 1984).

Schillerstrom argues, however, that the revocation of his license, which was more devastating to him than any penalty imposed by the criminal court, was, in realistic terms, punitive in nature. We recognize that such may be true, but as Division Two of this court said in *Nichols,* 169 Ariz. at 412, 819 P.2d at 998:

> "[O]ur cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment." [Citations omitted.] Thus, the fact that a statute designed primarily to serve remedial purposes incidentally serves the purposes of punishment as well does not mean that the statute results in punishment for double jeopardy purposes.

(quoting *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7). The trial court was correct in refusing to dismiss the complaint.

### THE SANCTION THE BOARD IMPOSED DID NOT OFFEND DUE PROCESS, AND THE TRIAL COURT ERRED IN SUBSTITUTING ITS OWN JUDGMENT FOR THAT OF THE BOARD

The Board complains that the trial court overstepped its bounds and substituted its own judgment for that of the Board when it determined that the revocation order was excessive. Schillerstrom responds that his due process argument necessitates some reweighing of the evidence. He claims that the evidence does not support all of the Board's findings and that whatever the findings, the sanction imposed by the Board was too harsh.

For those who are qualified, the practice of a profession is a right, not just a privilege. *Application of Levine,* 97 Ariz. 88, 90–91, 397 P.2d 205, 206–07 (1964). Before the State can curtail that right, it must afford due process of law. *Id.* at 91, 397 P.2d at 207. If a protected liberty interest like the right to practice a profession is at stake, the State's interest must justify the degree of infringement which ensues from the sanction, and appropriate procedures must be used to guard against arbitrary action. *See Large v. Superior Court,* 148 Ariz. 229, 235–36, 714 P.2d 399, 405–06 (1986).

In reviewing an administrative action "the trial court may not reweigh the evidence in order to resolve perceived conflicts. Rather, in order to reverse the agency's decision, the trial court must find that there was no substantial evidence to support the agency decision," *DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 335–36, 686 P.2d 1301, 1305–06 (App.1984), or that the agency acted arbitrarily, capriciously, or abused its discretion. *Webster v. State Bd. of Regents,* 123 Ariz. 363, 365, 599 P.2d 816, 818 (App. 1979). With respect to the latter, an administrative penalty is excessive only if it is so disproportionate to the offense as to shock one's sense of fairness. *Bear v. Nicholls,* 142 Ariz. 560, 563, 691 P.2d 326, 329 (App.1984).

With respect to the specifics of whether the evidence supported the Board's finding, Schillerstrom says that the Board erred in concluding he had been deceitful on his license-renewal application because, at the time he filed it, he had not been convicted; and he did not realize that the events of July 3, 1990, when he went to the sheriff's office and was fingerprinted and photographed, constituted an arrest. Although Schillerstrom testified before the Board that he did not know he had been charged, there was undisputed testimony that, prior to filing the application, he had mailed to the Board's executive director a copy of a newspaper article reporting his indictment. The Board was well within its discretion in finding that Schillerstrom did know he had been charged with a felony when he filed the application. Conspicuously absent on appeal is any argument that Schillerstrom did not realize when he filed the application for renewal of his license that he had been *charged* with a crime.

Schillerstrom uses the fact that he told the Board's executive director about the pending charges as irrefutable proof that he had no intention to deceive when he answered "no" on the application for renewal of his license. The information given the Board's employee was, however, imparted months before the application was filed. It is conceivable that Schillerstrom might have hoped that the information had never reached the members of the Board or that, in view of the answer on the application, the Board might assume the earlier information was stale.

Schillerstrom also argues that the conviction should not have been used against him because in 1992 the superior court designated the offense a misdemeanor and later expunged the conviction. Assuming that we can take judicial notice of the documents which are attached to Schillerstrom's brief to support that assertion, *see McRae v. Dodt,* 50 Ariz. 336, 339, 72 P.2d 444, 446 (1937), Schillerstrom, was nonetheless convicted of a misdemeanor involving moral turpitude, a term that generally refers to acts that adversely reflect on one's honesty, integrity, or personal values. *See State ex rel. Dean v. Dolny,* 161 Ariz. 297, 300 n. 3, 778 P.2d 1193, 1196 n. 3 (1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990). As to the expunction, Schillerstrom concedes that at the time of the hearing, he stood convicted of a crime. The subsequent expunction has no effect on actions of the Board which preceded it.

Schillerstrom also says that even if the evidence supports all the Board's findings, the revocation of his license was unnecessarily harsh. He argues that since he successfully completed probation without filing additional false claims, there is no reason to believe that he would resort to his old ways. What Schillerstrom did while under the scrutiny of a probation officer is not necessarily a good barometer of how he might act when he is unsupervised. As of the time of the hearing, the Board had adequate reasons for concluding that Schillerstrom was not trustworthy.

We see nothing in the sanction imposed that shocks the conscience. At least one court has found that conduct very similar to Schillerstrom's justified the revocation of a license to practice medicine. *See Kaplan,* 46 Ill.App.3d 968, 5 Ill.Dec. 303, 361 N.E.2d 626 (doctor made false accident claims for false victims). It is obvious that the trial judge substituted her own judgment for that of the Board. Indeed, her order says as much. The Board's action was supported by the evidence and was not arbitrary.

The judgment of the trial court is reversed and this case is remanded with instructions to enter judgment affirming the Board of Chiropractic Examiner's revocation of Schillerstrom's license to practice.

WEISBERG, P.J., and JACOBSON, J., concur.