STATE OF NEBRASKA, APPELLEE, V. PHILIP M. YOUNG, APPELLANT.
530 N.W.2d 269

Filed March 14, 1995.    No. A-94-495.

James E. Schaefer, of Gallup & Schaefer, for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

Philip M. Young appeals his conviction for driving under the influence of alcohol in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992). At the time of his arrest, his license was impounded pursuant to Neb. Rev. Stat. § 39-669.15 (Cum. Supp. 1992), and he petitioned the Nebraska Department of

Motor Vehicles for an administrative hearing to appeal the automatic revocation of his driver's license. That proceeding resulted in an administrative determination in Young's favor. Before trial, Young moved to have this case dismissed on the basis that the determinations in the driver's license revocation proceedings conclusively determined the issues in this case and the Double Jeopardy Clause applied to prevent determination of these issues again. Young appeals on the basis that the trial court erred in denying his motion to dismiss and also in finding that the evidence was sufficient to support the conviction. We conclude that the Double Jeopardy Clause does not preclude this prosecution and that the evidence was sufficient to sustain his conviction. We therefore affirm.

## STATEMENT OF FACTS

On Friday, April 16, 1993, at approximately 9 p.m., Anne Ball and her son were on their way home after shopping. While traveling south on 24th Street at the intersection of 24th and M Streets, in Omaha, Nebraska, Ball noticed a car pulling out from in front of the Cardinal Bar and traveling in the same direction as she. Later, she learned that car was operated by Young. She observed that Young swerved within his lane, and at one point, he forced Ball's car off of the road and onto the curb. Five blocks later, Young ran a red light and almost collided with another vehicle. Ball became irate because of Young's driving, and she followed him in order to get his license plate number. She saw him turn into an alleyway on Railroad Avenue. She then pulled into a nearby auto body shop and reported the matter to a 911 operator over the telephone. After making the call to 911, Ball drove her car into the alley where Young's car was parked. Ball and Young engaged in a verbal confrontation. Ball then left and called 911 again. During that call, the police arrived and took Ball's statement. Two police cars then followed Ball to Young's car.

Upon arriving, Officer Gregory Hansen noticed the brake lights of a vehicle inside Young's garage come on and go off. Officer David Baker then observed Young get out of the vehicle. Baker then took Young's statement. He noticed that Young's eyes were glassy and red and that the odor of alcohol

was emanating from him. Baker then asked Young if he would take field sobriety tests. Young agreed, but was argumentative when asked to actually perform the requested tests. Baker stated that Young failed the "alphabet recitation test," the "count down test," and the "manual dexterity test." Both officers testified that in their opinion, Young was intoxicated. The officers placed Young under arrest for driving while under the influence of alcohol and transported him to the police station, where a breath test was administered. The breath test showed that Young's breath had a concentration of .169 of 1 gram of alcohol per 210 liters of breath.

Ball testified that she was a nurse at the VA hospital and worked in the substance abuse treatment center, which deals with alcohol and drug abuse. She stated that as part of her job, she has substantial contact with people who are under the influence of alcohol and that she knows the common indicators of intoxication. She was not asked to render an opinion on whether Young was intoxicated, but she testified that he had the common symptoms of intoxication—that is, he had a red and flushed face, a casual appearance, and slurred speech, and he swayed while he walked. She also testified that he was irrational, gruff, unruly, and addressed her with racial epithets.

At trial, George Cranford, a friend of Young, testified that on the night in question, he was at Young's residence asleep on the couch waiting for Young to get home from work. Cranford stated that at around 9 p.m., Young entered the house and started ranting about a crazy woman who followed him and started yelling at him. Cranford stated that Young then started gulping whiskey from a bottle Cranford had just opened. Young went back outside to lock up the car and shut the garage door. Cranford then went back to sleep, and by the time he woke up, Young had already been transported by police to the police station.

Prior to trial, Young moved to dismiss the case on the basis of issue preclusion. After an evidentiary hearing, the trial court denied that motion.

## ASSIGNMENTS OF ERROR
Young alleges the district court erred (1) in not finding that

the doctrines of res judicata and collateral estoppel barred the State from relitigating issues or claims previously settled in the administrative license revocation hearing and (2) in not finding there was insufficient evidence to support the conclusion that Young was operating a motor vehicle while being intoxicated.

## GENERAL CONSIDERATIONS

The U.S. Supreme Court has stated that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). Young's counsel argues that the State's action in attempting to take Young's license precludes the State from prosecuting him in this action. In so doing, Young's counsel relies upon those cases that analyze double jeopardy in terms of collateral estoppel, issue preclusion, and res judicata. These issues are included in those double jeopardy cases which analyze the doctrine from the standpoint of a second prosecution after either an acquittal or a conviction. We shall consider this group of cases first under the heading of issue preclusion. There is considerable authority in which courts have considered whether the doctrine of issue preclusion can apply to cases similar to this one. Young also relies upon a second group of cases which considers the doctrine of double jeopardy from the standpoint of multiple punishments for the same offense. This issue developed recently out of the holdings of the U.S. Supreme Court in *Department of Revenue of Montana v. Kurth Ranch*, ____ U.S. ____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994), and *United States v. Halper, supra*. These two cases recognized that a sanction which has been designated as a civil sanction can be a punishment for purposes of double jeopardy and that if such a penalty was provided for in addition to a criminal punishment, the Double Jeopardy Clause could be violated. Young's counsel argues that the taking of a driver's license in an administrative proceeding is a punishment under the Double Jeopardy Clause which precludes a later prosecution of driving under the influence, and the fact that the attempt to take his license was

ineffective is not material to this issue. We shall consider those cases under the heading of multiple punishments.

## ISSUE PRECLUSION

*Standard of Review.*

The doctrine of issue preclusion is another name for the doctrine of collateral estoppel. The doctrine is called by both names. See, *JED Constr. Co., Inc. v. Lilly*, 208 Neb. 607, 305 N.W.2d 1 (1981); *Bartunek v. Geo. A. Hormel & Co.*, 2 Neb. App. 598, 513 N.W.2d 545 (1994). In this opinion, we shall use the term "issue preclusion" except when the doctrine is referred to as "collateral estoppel" in quoted material.

The four conditions which must exist in order for issue preclusion to apply are that (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or a privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Rosse v. Rosse*, 244 Neb. 967, 510 N.W.2d 73 (1994); *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993). The applicability of the doctrine of issue preclusion constitutes a question of law for which an appellate court is obligated to reach a conclusion independent from the lower court's conclusion. *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994); *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994).

*Parties' Positions.*

Young argues that once the validity of a claim is decided at an administrative hearing and not appealed from, as a general rule, the decision is res judicata, and the claim cannot be relitigated. For this proposition, Young cites *L. J. Vontz Constr. Co. v. City of Alliance*, 243 Neb. 334, 500 N.W.2d 173 (1993). In the case at hand, Young argues that in the administrative license revocation hearing, the director of the Department of Motor Vehicles determined that Young was not intoxicated at the time he was operating his vehicle, and this finding bars any relitigation on the issue of whether Young was intoxicated at that time.

In *L. J. Vontz Constr. Co.*, the Supreme Court held that the

denial of a claim in an administrative proceeding before the city council was res judicata to a subsequent action in the district court to recover a claim based on the same facts. In making that decision, the court said:

> [A] claim before a tribunal, be it an administrative agency or a municipal board, once decided and not appealed from, or if appealed and the appeal is dismissed, is res judicata and may not, as a general rule, be relitigated. [Citation omitted.] "An unreviewed administrative hearing can preclude later litigation on the same issues." *Scott v. Mattingly*, 241 Neb. 276, 281, 488 N.W.2d 349, 351-52 (1992).

243 Neb. at 344, 500 N.W.2d at 179.

■ On the other hand, the State relies on *Neil v. Peterson*, 210 Neb. 378, 314 N.W.2d 275 (1982). In *Neil*, the defendant had been prosecuted in the county court for driving under the influence of alcohol. He refused to take a breath, blood, or urine test when he was arrested. In the county court, he pled guilty to driving under the influence, and the charges of refusing to submit to a chemical test were dismissed. The Director of Motor Vehicles then brought an administrative action to revoke Neil's driver's license because he refused to take a chemical test. In the license revocation proceeding, Neil argued that the county court criminal proceeding had adjudicated the issue of his having refused to take a test and that he was being subjected to double jeopardy. The district court accepted Neil's argument, but the Supreme Court reversed, stating:

> The same motor vehicle operation may give rise to two separate and distinct proceedings. One is a civil and administrative licensing procedure instituted by the Director of Motor Vehicles to determine whether a person's privilege to drive is revoked. The other is a criminal action instituted in the appropriate court to determine whether a crime has been committed. Each action proceeds independently of the other and the outcome of one action is of no consequence to the other.

*Id.* at 379, 314 N.W.2d at 276. See *Ziemba v. Johns*, 183 Neb. 644, 163 N.W.2d 780 (1968), for a similar holding. Young

argues that *Neil* differs from the case at hand in that *Neil* was decided on the basis of double jeopardy, while the issue in the instant case is based on collateral estoppel.

"Collateral estoppel" means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties or their privies in any future lawsuit. . . .

This court has also recognized that collateral estoppel may apply in a criminal case. In *State v. Gerdes*, 233 Neb. 528, 446 N.W.2d 224 (1989), a case involving drunk driving, we noted that the doctrine may be applied when an identical issue was decided in a prior action, there was a judgment on the merits which was final, the party against whom the doctrine is to be applied is a party or is in privity with a party to the prior action, and there was an opportunity to fully and fairly litigate in the prior litigation. We reasoned that the constitutional protection against double jeopardy afforded the doctrine of collateral estoppel to a criminal defendant.

*State v. Dean*, 246 Neb. 869, 874-75, 523 N.W.2d 681, 688 (1994). On the basis of this statement and the holding in *Neil*, we conclude that the distinction Young seeks to draw is not valid because the doctrine of issue preclusion as utilized in criminal proceedings is based upon the doctrine of double jeopardy.

In *Dean*, the Supreme Court clearly stated that issue preclusion applies in criminal cases; however, it was only considering whether a factual determination in one criminal case precluded relitigation of the same issue in another criminal case. In the case at hand, Young seeks to use the doctrine of issue preclusion to require a criminal court to accept as binding a determination made in an administrative proceeding. Young relies on *L. J. Vontz Constr. Co. v. City of Alliance*, 243 Neb. 334, 500 N.W.2d 173 (1993), for his argument. However, both of the proceedings in *L. J. Vontz Constr. Co.* were civil proceedings. That case did not consider whether an administrative decision can affect a criminal case.

With respect to administrative hearings and separation of powers, a notion similar to that quoted in *Neil* above, the

Supreme Court recently stated the following: "State agencies may perform functions of a judicial, quasi-judicial, or factfinding character; however, such agencies are extrajudicial bodies, not courts, judges, judicial bodies, or officers. [Citation omitted.] The proceedings of such agencies are not judicial and are without judicial effect." *State ex rel. Stenberg v. Murphy*, 247 Neb. 358, 367, 527 N.W.2d 185, 193 (1995).

■ In some states, the courts have held or indicated that a factual determination in an administrative hearing for driver's license revocation does not operate to preclude prosecution for driving while intoxicated because the administrative proceedings were not conducted by a court. See, *Walton v. State*, 831 S.W.2d 488 (Tex. App. 1992); *State v. Ratliff*, 304 Or. 254, 744 P.2d 247 (1987). However, in these cases, the courts did not rest solely on this point, but recognized additional problems when a defendant seeks to rely upon the doctrine of issue preclusion in a criminal case involving a previous administrative determination concerning license revocation. *Neil* gives an indication of how the Supreme Court might rule if it were presented with a case where a factual determination in an administrative proceeding was used to preclude litigation of an issue in a criminal case. However, it is not a clear holding on this point. Therefore, in the absence of clear authority, we will not rely solely on *Neil*, but will consider additional authority in deciding whether issue preclusion can be utilized in the instant case.

*Full and Fair Litigation.*

■ Our research discloses that other jurisdictions have assumed that the doctrine of issue preclusion may apply to allow the determination made by an administrative officer to preclude litigation of the same issue in a criminal court if the elements for issue preclusion are met. However, these courts have held that issue preclusion does not apply to criminal proceedings after an administrative determination in a driver's license revocation proceeding has been made because at least one element of issue preclusion is not present—the State has not had a full and fair opportunity to litigate the issue in the

previous administrative hearing. *State v. Bishop*, 113 N.M. 732, 832 P.2d 793 (N.M. App. 1992); *State v. Stearns*, 159 Vt. 266, 617 A.2d 140 (1992); *State v. Goodon*, 443 N.W.2d 74 (Iowa App. 1989); *State v. Ratliff, supra.* These courts have concluded that administrative license revocation laws establish a quick procedure which is not intended to give the State a full and fair opportunity to litigate the issues, and therefore issue preclusion does not apply in later criminal proceedings. The court in *Bishop* stated the following:

> [I]f every license revocation hearing carries with it potential collateral estoppel impact on a subsequent criminal action, the state may feel compelled to intervene in every administrative action to effectively protect its interests in some future criminal proceeding. The net effect would be to slow down what should be a summary administrative proceeding designed to handle license revocation matters quickly. [Citations omitted.] In addition, we agree with those courts that recognize that the integrity of our judicial system requires adjudications of criminal guilt or innocence to be made in a judicial setting, not in an administrative hearing.

113 N.M. at 735, 832 P.2d at 796.

In Missouri, the same result was reached; however, a Missouri statute specifically provided that a determination made by the administrator for license revocation is independent from a determination in a criminal proceeding. See *State v. Warfield*, 854 S.W.2d 9 (Mo. App. 1993). We did not find a case where the administrative hearing in a license revocation proceeding was held to preclude or affect a later trial for driving under the influence.

In adopting Neb. Laws 1992, L.B. 291, which, among other things, amended Neb. Rev. Stat. §§ 39-669.15 to 39-669.19 (Reissue 1988 & Cum. Supp. 1992), Senator Emil E. Beyer, Jr., stated the reasons for introducing the bill as follows:

> LB 291 was introduced with the intent of providing a swift and sure method for administratively revoking a person's driver's license if he or she either refuses to submit to a test of his or her alcohol concentration under the state implied consent law or if such test of alcohol concen-

tration indicates that he or she is under the influence of alcohol or drugs in violation of Section 39-669.07.

The bill also finds that persons who drive while under the influence of alcohol or drugs are hazardous to the health and safety of all persons using the highways. The intent of LB 291 is to provide a deterrent to persons who might be tempted to drink and drive by providing for the immediate revocation of the license while still protecting an individual's right to due process . . . .

Statement of Purpose, L.B. 291, Committee on Transportation, 92d Leg., 1st Sess. (Feb. 11, 1991).

The Legislature therefore adopted an informal procedure for quick license revocation to protect the public from drunk drivers. It also allows individuals who have had their licenses revoked to appeal such revocation to an administrative body when they feel the revocation was wrongful. However, this administrative appeal provision was not meant to be the forum where the State has the obligation to present its case involving criminal drunk driving charges. Thus, the State does not have the same interest in a quick license revocation proceeding as it does in criminal prosecution.

*Identity of Issues.*

If the issues in the two proceedings are not identical, the doctrine of issue of preclusion does not apply. In this case, we find that the issues in the administrative determination are not the same as the issues in the criminal prosecution. Thus, another necessary element for the application of issue preclusion is not present.

Under § 39-669.07, it is a crime for a person to be in the actual physical control of any motor vehicle while under the influence of alcohol or drugs, or with a concentration of more than ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters of his or her blood, or with a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 210 liters of his or her breath. Since Young submitted to the breath test, the issues decided at the administrative hearing were as follows: (1) Did the peace officer have probable cause to believe Young was in control of a motor vehicle in violation of

§ 39-669.07, (2) was Young's arrest lawful, (3) was he advised of the consequences if the chemical test showed a concentration of alcohol above that allowed by statute, and (4) was he operating or in the actual physical control of a motor vehicle while having an alcohol concentration above that allowed by statute? See § 39-669.15(6)(c)(ii). The hearing officer made findings in accordance with these issues only. In so doing, the hearing officer did not find that Young was not intoxicated while driving, but did find that Young did not have the concentration in his breath at the time he was driving, as prohibited under § 39-669.07(1)(c). The hearing officer did not have the power to determine and did not purport to consider or determine whether Young was driving in violation of § 39-669.07(1)(a), that is, whether he was under the influence of alcoholic liquor. Therefore, the issues decided at the administrative hearing under § 39-669.15 are not identical to the issues decided at a criminal proceeding under § 39-669.07.

The doctrine of issue preclusion does not apply if the issue sought to be precluded at a subsequent proceeding is not the same as the issue litigated in the prior proceeding. Young raised the defense of issue preclusion by a motion to dismiss in the district court, and in this court, Young argues that the license revocation proceeding determined he was not intoxicated at the time he was operating the vehicle. Even if issue preclusion were recognized in these circumstances—which we hold it is not—Young would still not be entitled to utilize issue preclusion because the administrative law decision upon which he relies only purports to ·determine the concentration of alcohol in Young's breath. Since Young can still be found guilty under § 39-669.07(1)(a) without a breath test, the decision of the administrative hearing is irrelevant.

## MULTIPLE PUNISHMENTS

■ At oral argument, Young's attorney argued that *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994), and *U.S. v. McCaslin*, 863 F. Supp. 1299 (W.D. Wash. 1994), apply to the case at hand to preclude a criminal prosection after the conclusion of a civil proceeding for forfeiture involving the same facts, on the basis that this procedure violates the Double

Jeopardy Clause. These two cases involved civil forfeiture proceedings that were held prior to a criminal prosecution, where the defendants' personal property involved in the criminal act was seized and retained by the U.S. Government. The courts in both of these cases held that civil forfeitures under the provisions involved in these cases constituted " ' "payment to a sovereign as punishment for some offense." ' " *McCaslin*, 863 F. Supp. at 1302. These courts further held that such civil forfeitures are punishment for purposes of double jeopardy. Thus, these courts held that subsequently imposed criminal punishments constituted multiple punishments for the same offense which violated the double jeopardy clause and therefore would have to be vacated. These cases are based upon *Department of Revenue of Montana v. Kurth Ranch*, _____ U.S. _____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994), and *United States v. Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), which held that a civil penalty may constitute punishment for purposes of double jeopardy. These lower court cases seem to go further than *Halper* or *Kurth Ranch*. In *Halper* and *Kurth Ranch*, the Court used a criminal prosecution to preclude a later civil action, whereas these lower courts used previous civil forfeiture proceedings to preclude criminal prosecution. However, we will assume the distinction is not important for our purposes.

The *Halper* Court changed longstanding precedent and held that the legislature's characterization of a sanction as civil was not final and did not foreclose the possibility that the "civil" sanction could be a penalty under the Double Jeopardy Clause. In the *Kurth Ranch* case, the Court determined that a tax could be a penalty. The *$405,089.23 U.S. Currency* and *McCaslin* cases cited above extend the same notion to forfeiture cases under federal drug laws. Young's counsel asked us to apply the holding of these federal cases to driver's license revocation proceedings.

Young's counsel supplied this court with copies of trial court decisions from courts in Florida and Ohio which applied the principles discussed in the above-cited federal cases. These trial courts held that the taking of a driver's license was a penalty, and hence, after proceedings under license revocation laws, the

criminal prosecution for the same incident violated the Double Jeopardy Clause. These cases are in no sense precedent, but they do articulate Young's arguments, and they indicate that other defense counsel are likely to rely upon this position in future cases. The *Halper* and *Kurth Ranch* cases are comparatively new, and cases which are based upon an application of the principles announced in them are not likely to have worked their way through appellate courts to generate legal authority. We find very few cases which consider whether the principles announced in *Halper* and *Kurth Ranch* should be applied to cases involving something other than money and property.

We found no appellate level cases where the *Halper* holding was discussed with reference to a claim that driver's license revocation constituted a penalty under the Double Jeopardy Clause. We have found two recent cases where litigants attempted to have courts treat the revocation of a professional license as punishment under the Double Jeopardy Clause, and both courts refused to so hold. See *Schillerstrom v. State*, 180 Ariz. 468, 885 P.2d 156 (Ariz. App. 1994), and *Alexander v. State Bd. of Med. Examiners*, 644 So. 2d 238 (La. App. 1994). In *Alexander*, the Louisiana court quoted *Halper* as follows:

> "[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment. . . . [U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."

644 So. 2d at 243.

The Louisiana court concluded that the U.S. Supreme Court left the determination of whether the sanction was remedial to the lower courts and concluded that revoking the medical

license of a doctor who had been convicted of a felony was not a violation of the Double Jeopardy Clause. In *Schillerstrom*, the Arizona court came to the same conclusion in the revocation of a chiropractor's license. The Arizona court recognized the fact that even remedial civil sanctions can carry the " ' "sting of punishment." ' " 885 P.2d at 159.

Under *Halper*, the question is whether revoking a driver's license is remedial, and thus only a deterrent, or whether it is retribution, and thus a penalty. "A license to operate a motor vehicle in this state is issued, not as a contract, but as a privilege, with the understanding that such license may be revoked for cause by the state." *Durfee v. Ress*, 163 Neb. 768, 772, 81 N.W.2d 148, 150 (1957). The *Durfee* court further stated, "The purpose of [license] revocation is to protect the public, and not to punish the licensee." *Id*. at 773, 81 N.W.2d at 151. The revocation of a driver's license is not a penalty for the violation of the statutes or ordinances involved. See *Durfee, supra. Durfee* is a case involving revocation of a driver's license under the point system. It is dispositive of this issue raised by the defendant. The U.S. Supreme Court cases of *Halper* and *Kurth Ranch* justify revisiting this issue in light of these holdings. However, upon reflection, the principles of *Halper* and *Kurth Ranch* do not require abandonment of the reasoning set forth in *Durfee*.

The purpose of enacting the license revocation procedure under §§ 39-669.15 to 39-669.19 was to protect the public by getting people with drinking propensities off the road quickly and to deter driving while intoxicated. This civil license revocation is therefore remedial and not a punishment, even though the loss of a driver's license in our society carries a considerable "sting." We conclude that a criminal prosecution for driving under the influence is not a violation of the Double Jeopardy Clause on the basis that the driver has already been subject to possible revocation of his or her driver's license under §§ 39-669.15 to 39-669.19 for the same incident.

## SUFFICIENCY OF EVIDENCE

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility

of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994).

In the case at hand, Ball observed Young's vehicle pull away from a bar and drive erratically. At one point, Young's vehicle forced Ball's vehicle over a curb. Ball also observed Young run a red light and almost run into another automobile. After Ball followed Young to his residence and confronted him, she observed that Young exhibited signs of intoxication. Ball was aware of the signs of intoxication due to her experience as a nurse in the substance abuse program at the VA hospital. After police officers arrived, they performed field sobriety tests and determined that Young was under the influence. After placing Young under arrest, officers gave him a breath test which yielded a reading of .169. The above is clearly substantial evidence to support a finding that Young violated § 39-669.07.

Young's only witness in his defense created an interesting fact question. Cranford testified that he was in Young's home when Young arrived after being confronted by Ball. He stated that after Young came into the house, Young gulped a substantial amount of whiskey before going back outside to lock up the car and shut the garage door. During the time Young was outside, Cranford went back to sleep on Young's couch and therefore did not witness any of the events involving the police.

On the basis of this testimony, Young argues that the breath test was unreliable as to the amount of alcohol present during the time Young was in control of the vehicle he was driving and that therefore the State failed to carry its burden of proof. Such evidence supplies a certain amount of spice to jury trials. However, the credibility of such a witness is a matter for the jury to decide. And in this case, the fact that the jury did not accept Cranford's testimony reaffirms our belief in the jury system.

We find no error and therefore affirm the trial court's decision.

AFFIRMED.